T.C. Memo. 1998-155

UNITED STATES TAX COURT

CLEO PERFUME, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26008-96.                    Filed April 27, 1998.

<u>David M. Garvin</u>, for petitioner.

<u>James P. Dawson</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Respondent determined a $741,379 deficiency in
petitioner's Federal income tax for tax year ended June 30, 1991,
a $37,068.95 section 6651(a)(1) addition to tax, and a $148,275.80
section 6662(a) accuracy-related penalty.

Following concessions by petitioner,[1] the remaining issues for decision are: (1) Whether petitioner had additional income of $2,031,778 in its tax year ended June 30, 1991; (2) whether petitioner is liable for the section 6651(a)(1) addition to tax; and (3) whether petitioner is liable for the section 6662(a) accuracy-related penalty.

All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts and the attached exhibits are incorporated herein by this reference.

Cleo Perfume, Inc.

Cleo Perfume, Inc. (petitioner or CPI), a Florida corporation, is engaged in the business of distributing perfume on a wholesale basis. Its principal place of business at the time the petition was filed was Miami, Florida. It employs the accrual method of accounting and reports its income on the basis of a fiscal year ending June 30.

---

[1] Petitioner conceded that it is entitled to neither a $65,000 bad debt deduction nor $59,701 in "other deductions". Petitioner also conceded that it is liable for a $400 environmental tax.

During the year in issue, petitioner's stockholders were: Oscar Campos, Sr., president; Oscar Campos, Jr. (Mr. Campos, Sr.'s son), vice president for sales; and Elisa C. Martinelli (Mr. Campos, Sr.'s wife), treasurer.

Petitioner acquires perfumes from numerous suppliers, including Aeroboutique, S.A. (ASA), of San Juan, Puerto Rico. Between July 1, 1989, and June 30, 1990, ASA sent petitioner merchandise valued at $2,031,778. After examining the delivered merchandise, Messrs. Campos, Jr. and Sr., telephoned Edgar Balzac, the owner of ASA, threatening to return the merchandise to ASA because the goods were at the end of their useful shelf life and therefore unacceptable. Following further discussion, Messrs. Balzac, Campos, Jr., and Campos, Sr., agreed that in lieu of returning the merchandise, petitioner would keep the perfume on consignment and would pay ASA only for the merchandise that it was able to sell.

By June 30, 1990, CPI was only able to sell approximately $100,000 of the merchandise received from ASA. (This amount was properly included in income for the year.) Inasmuch as the majority of the goods could not be sold, a decision was made to attempt to sell the merchandise the following Christmas season. The consigned merchandise remained in boxes on the racks in petitioner's warehouse.

Credit Line With Barnett Bank and Certified Financial Statements

In 1989, petitioner obtained a $1.5 million line of credit with Barnett Bank.  A security interest in petitioner's accounts receivable and inventory and a guaranty by Mr. Campos, Sr., were given as collateral for this line of credit.  Mr. Campos, Sr.'s guaranty was secured by a first mortgage on his residence.

To maintain the line of credit, petitioner was required to deliver to the bank certified financial statements.  Barnett Bank's credit department analyzed the certified financial statements prepared for petitioner.  On a quarterly basis, Barnett Bank sent a group of its own auditors to conduct a review of petitioner's accounts receivable, accounts payable, and inventory in order to verify the correctness of the certified financial statements as well as petitioner's books and records.  From 1989 through 1994, there were no disparities among these various documents.

Petitioner hired Verdeja, Iriondo & Gravier (VIG), certified public accountants, to perform the audit and prepare the certified financial statements for Barnett Bank.  Oscar Rosales performed the initial audit for VIG.  Petitioner later hired Mr. Rosales as its comptroller.  (Before Mr. Rosales was hired, petitioner never had a comptroller.)  Mr. Rosales worked for petitioner through 1992.

Incorrect Entry

Mr. Rosales was not involved in the negotiations between petitioner and ASA. He neither was informed nor independently discovered that petitioner held the ASA inventory on consignment. After taking a physical inventory of the goods in petitioner's warehouse, Mr. Rosales mistakenly included the $2,031,778 ASA consignment merchandise in petitioner's June 30, 1990, ending inventory on petitioner's audited financial statements and credited $2,031,778 to trade accounts payable (reflecting his belief that petitioner had purchased the goods). Mr. Rosales did not consult with either Mr. Campos, Jr. or Sr., when making this entry.

"Correcting Entry"

Sometime in April 1991, Mr. Rosales questioned why the trade account payable to ASA recorded on the books remained unpaid. Mr. Campos, Sr. informed Mr. Rosales that there was no payable due ASA. Mr. Rosales then stated that he would correct the books and remove the payable. However, instead of debiting accounts payable and crediting beginning inventory, Mr. Rosales debited accounts payable and credited paid-in capital (reflecting his belief that the shareholders had assumed the liability from the account payable to ASA). A physical inventory was taken at yearend June 30, 1991, and

the consigned merchandise, less $100,000 which had been sold, remained on hand.

VIG, which prepared the financial statements for tax year ended June 30, 1991, inquired in July 1991 as to why the $2,031,778 of trade accounts payable had been eliminated from the books. Mr. Rosales represented that CPI's officers had assumed responsibility for the debt and that the amount was recorded as additional paid-in capital. VIG requested and received a letter[2] signed by

---

[2] The letter states:

> In connection with the audit of the financial statements of Cleo Perfumes, Inc., for the years ended June 30, 1990 and 1991, we have made available to you all information related to stockholder's equity.
>
> During 1991, the Company's stockholders assumed personally and subsequently capitalized as part of paid-in capital a note receivable from stockholder in the amount of $371,157, a trade accounts payable to an unaffiliated company in the amount of $2,031,778, and a note payable to bank in the amount of $200,000. The netting of these transactions increased paid-in capital by $1,860,621.
>
> The undersigned stockholders of Cleo Perfumes, Inc. hereby confirm to you that the afore-mentioned [sic] transactions were in due time properly and adequately approved by the Board of Directors and also that Mr. Oscar Campos, Sr., President of our

(continued...)

petitioner's stockholders, dated July 15, 1991, confirming that the obligation had been assumed by petitioner's stockholders and that the comptroller had been authorized to write off the debt.

On August 15, 1991, VIG also sent a letter to ASA requesting confirmation that petitioner was not indebted to ASA. On September 13, 1991, ASA confirmed that petitioner had an outstanding balance of zero as of June 30, 1991.

Destruction of Remaining ASA Merchandise

Sometime in 1993, Martha Balzac (vice president of ASA and Mr. Balzac's wife) visited petitioner's offices and informed Mr. Campos, Sr., that he could destroy the remaining unsold ASA consignment merchandise. Accordingly, in 1995,[3] CPI destroyed all of the remaining approximately $1.8 million of ASA merchandise. On its computer-generated June 30, 1991, inventory listing, petitioner identified the discarded merchandise by highlighting the merchandise in yellow.

New Accounting Firm

---

[2](...continued)
    Corporation, was duly authorized to take all actions required to implement the related resolutions.

[3]    The record is unclear as to why petitioner waited 2 years to destroy the unsold ASA merchandise.

Petitioner hired Smith, Ortiz, Gomez & Buzzi, P.A. (SOGB), to audit its tax years ended June 30, 1992, 1993, and 1994, and prepare certified financial statements for those years. SOGB was not informed that the ASA goods were on consignment.

Federal Income Tax Returns

VIG prepared petitioner's Federal income tax return for tax year ended June 30, 1990, based on its certified financial statement for that year. This return reported beginning inventory of $2,389,349, ending inventory of $4,065,376, and purchases of $12,093,315.

On approximately September 13, 1991, petitioner filed a Form 7004, Application for Automatic Extension of Time To File Corporation Income Tax Return, requesting a 6-month extension. On March 23, 1992, respondent received petitioner's return for tax year ended June 30, 1991.

VIG also prepared petitioner's return for tax year ended June 30, 1991, based on its certified financial statement for that year. This return reported beginning inventory of $4,065,376, ending inventory of $3,074,506, and purchases of $11,700,786. No discharge of indebtedness income related to the $2,031,778 ASA trade account payable was reported on this return.

Petitioner's return for tax year ended June 30, 1992, was based on petitioner's 1992 certified financial statements for that

year.  This return reported beginning inventory of $3,074,506, ending inventory of $3,673,423, and purchases of $13,758,337.

On its return for tax year ended June 30, 1993, petitioner adjusted the beginning inventory to correct the "correcting" journal entry Mr. Rosales made by reducing by $1,860,621 beginning inventory and paid-in capital.

Notice of Deficiency

In the notice of deficiency, respondent determined that petitioner was liable for a $741,379 deficiency on the theory that it was relieved of a $2,031,778 liability during the tax year ended June 30, 1991.  Respondent also determined a section 6651(a)(1) addition to tax and a section 6662(a) accuracy-related penalty.

OPINION

Issue 1. Additional Income

Our first task is to determine whether petitioner had additional income of $2,031,778 in its tax year ended June 30, 1991.  In this regard, respondent makes three alternative arguments.

A.  Discharge of Indebtedness Income

Section 61(a)(12) provides the general rule that gross income includes income from the cancellation of indebtedness. Generally, the amount of income includable is the difference between the face value of the debt and the amount paid in satisfaction of the debt.

Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), affg.
T.C. Memo. 1992-673. The income is recognized in the year
cancellation occurs. Montgomery v. Commissioner, 65 T.C. 511, 520
(1975).

Respondent asserts that petitioner had a debtor relationship
with ASA, beginning on the date the goods were delivered in 1990
until some point in 1991, when the debt was discharged.
Continuing, respondent contends that there was a discharge of
$2,031,778 of indebtedness which, from a tax viewpoint, resulted in
discharge of indebtedness income to petitioner. Petitioner, on the
other hand, maintains that it never purchased the ASA perfume but
only held the merchandise on consignment. Consequently, petitioner
asserts there was no debt to be forgiven.

We agree with petitioner's position that it held the
merchandise from ASA on consignment. Consequently, we find that
there was no debt owed to ASA by petitioner;[4] thus, no debt
forgiveness occurred. Accordingly, we dismiss respondent's first
argument that petitioner had discharge of indebtedness income.

B. Tax Benefit Rule

The tax benefit rule includes an amount in current income to
the extent that: (1) The amount was properly deducted in a year

---

[4]    We recognize that pursuant to the auditor's request,
petitioner's shareholders signed a letter acknowledging their
assumption of a liability due ASA. Nonetheless, we accept Mr.
Campos, Sr.'s testimony that the letter was signed knowing that
there was no actual debt owing by petitioner to ASA.

prior to the current year, (2) the deduction resulted in a tax benefit, (3) an event occurs in the current year that is fundamentally inconsistent with the premises on which the deduction was originally based, and (4) a nonrecognition provision of the Internal Revenue Code does not prevent the inclusion in gross income. Hillsboro Natl. Bank v. Commissioner, 460 U.S. 370, 383-384 (1983); see Gold Kist, Inc. v. Commissioner, 110 F.3d 769, 772 (11th Cir. 1997), revg. per curiam 104 T.C. 696 (1995); Frederick v. Commissioner, 101 T.C. 35, 41 (1993). A current event is fundamentally inconsistent with the premises on which the deduction was originally based when that event would have prevented the deduction if the event had occurred in the year of the deduction. Hillsboro Natl. Bank v. Commissioner, supra; Frederick v. Commissioner, supra.

Respondent asserts that petitioner improperly derived a $2,031,778 tax benefit because that amount was treated (on petitioner's books) as a purchase and consequently petitioner's cost of goods sold for the year ended June 30, 1990, was overstated. Petitioner disagrees, claiming that even though its purchases were overstated, the ASA merchandise was included in petitioner's ending inventory and thus there was a wash.[5]

---

[5] Cost of goods sold is generally determined as follows:

    Beginning inventory
  + Purchases_____

(continued...)

Respondent claims that there is no evidence to prove the ASA merchandise was included in petitioner's ending inventory for the tax year ended June 30, 1990 or 1991.

We conclude that the ASA merchandise was included in petitioner's ending inventory for the tax years ended June 30, 1990 and 1991, and hence petitioner's cost of goods sold for those years was not overstated. Thus, petitioner received no tax benefit as a result of mistakenly treating and reporting the ASA consigned merchandise as a purchase.

In reaching our conclusion that the ASA merchandise was included in petitioner's 1990 and 1991 ending inventory, we find that Mr. Rosales, petitioner's comptroller, recorded the transaction consistent with his understanding that the consigned goods were acquired by purchase, and thus he included all unsold goods in inventory. We find compelling that on petitioner's tax return filed for the year ended June 30, 1993, petitioner made an adjustment to its beginning inventory when it realized the error in its reporting of the consigned goods. (Rather than carry over the ending inventory balance for the year ended June 30, 1992, petitioner reduced beginning inventory for the year ended June 30,

---

[5](...continued)
```
        Total goods available for sale
    -   Ending inventory
        Cost of goods sold
```

1993, by $1,860,621--the exact amount of the erroneous adjustment Mr. Rosales made in the year ended June 30, 1991.)

### C. Duty of Consistency

The duty of consistency (also known as the doctrine of quasi-estoppel) prevents a party from benefiting in a subsequent year from an error that was made in a prior year. See Southern Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 559-560 (1980). When the duty of consistency applies, the taxpayer must recognize income even though the earlier deduction was improper. Id. at 560.

The duty of consistency applies when: (1) The taxpayer made a representation or reported an item for Federal income tax purposes in one year, (2) the Commissioner acquiesced in or relied on that representation or report for that year, and (3) the taxpayer attempts to change that representation or report in a subsequent year, after the period of limitations has expired with respect to the year of the representation or report, and the change is detrimental to the Commissioner. Herrington v. Commissioner, 854 F.2d 755, 758 (5th Cir. 1988), affg. Glass v. Commissioner, 87 T.C. 1087 (1986). When the duty of consistency applies, the Commissioner may proceed as if the representation or report on which the Commissioner relied continues to be true, although in fact it is not. The taxpayer is estopped from taking a position to the contrary. Herrington v. Commissioner, supra.

Respondent contends that the duty of consistency is applicable herein.  Petitioner disagrees.

We conclude that the duty of consistency is not applicable under the facts herein.  There was no erroneous deduction in a prior year which respondent acquiesced in or relied on to respondent's detriment.  As stated above, petitioner's misreporting of the treatment of the consigned goods resulted in a wash when calculating the cost of goods sold deduction such that petitioner did not receive any benefit and respondent did not suffer any detriment.  Respondent has not suggested any other reason why the inflated inventory balances would cause respondent to fail to collect the correct amount of tax.  Consequently, we hold that the duty of consistency is inapplicable.

In sum, we hold that petitioner did not have additional income of $2,031,778 in its tax year ended June 30, 1991.

Issue 2.  Section 6651(a)(1) Addition to Tax

We next determine whether petitioner is liable for an addition to tax for failure to timely file its 1991 return.  Section 6651(a)(1) imposes an addition to tax of 5 percent of the amount of tax due per month for each month that a tax return is not timely filed, not to exceed 25 percent. An exception is made for reasonable cause not due to willful neglect.

One of the requirements of the automatic extension of time to file a tax return is the proper estimation of the final tax

liability for the taxable year.  Sec. 1.6081-4(a)(4), Income Tax Regs.  The failure to estimate properly the final tax liability on Form 7004 can invalidate the automatic extension and subject the taxpayer to an addition to tax pursuant to section 6651(a)(1) for failure to timely file the return.  Crocker v. Commissioner, 92 T.C. 899 (1989). Respondent argues that petitioner failed to estimate properly its tax liability on Form 7004 when it filed for the automatic extension, and thus the extension is invalid.

We agree.  Petitioner failed to report any tax liability on its application.  Putting aside petitioner's concessions, petitioner reported a $52,180 tax liability on its tax return for year ended June 30, 1991, despite the fact that it estimated "0" on its application.

Moreover, petitioner has failed to present any evidence on this issue (other than to contend that it is not liable for the addition) and has accordingly failed to satisfy its burden of proof.  Clearly, petitioner has failed to show that it estimated properly the final tax liability on Form 7004.  See, e.g., Scott v. Commissioner, T.C. Memo. 1997-507. Consequently, we sustain respondent's determination.

Issue 3.  Section 6662(a) Accuracy-Related Penalty

The final issue is whether petitioner is liable for the section 6662(a) accuracy-related penalty.  Section 6662 imposes an accuracy-related penalty equal to 20 percent of any portion of an

understatement attributable to a substantial understatement. A substantial understatement means an understatement which exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1). The understatement is reduced by that portion of the understatement for which the taxpayer had substantial authority or for which the taxpayer adequately disclosed the relevant facts in the return. Sec. 6662(d)(2)(B). Additionally, no penalty is imposed with respect to any portion of an understatement as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). Section 1.6664-4(b), Income Tax Regs., provides that reliance on professional advice constitutes reasonable cause and good faith if, under all the circumstances, the reliance was reasonable and the taxpayer acted in good faith. The taxpayer, however, must disclose to the adviser all relevant facts regarding the proper tax treatment of an item in order to be able to invoke the professional reliance exception.

Although petitioner retained the services of a tax return preparer, it did not disclose the relevant facts to the preparer. Accordingly, petitioner is liable for the section 6662(a) accuracy-related penalty with regard to the items it conceded.

To reflect the foregoing and petitioner's concessions,

<u>Decision will be entered under Rule 155</u>.