AGRO-JAL FARMING ENTERPRISES, INC., ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 15103–10, 3924–11.    Filed July 30, 2015.

P—a farming corporation—deducted the cost of various field-packing materials for the year in which it bought them. R contends that under I.R.C. section 464 and 26 C.F.R. section 1.162–3 P may deduct the cost of those materials only for the year in which P uses them. *Held*: The class of items described under section 464 as "feed, seed, fertilizer, or other similar farm supplies," does not include packing materials as "similar farm supplies." *Held*, *further*, the "provided that" clause of section 1.162–3 for the years at issue means that the cost of materials and supplies must be deducted as the items are used or consumed, *on the condition that* they haven't been deducted for any prior year. P may therefore deduct the cost of field-packing materials for the year of purchase.

*Robert Warren Wood* and *Craig A. Houghton*, for petitioner.
*Chong S. Hong* and *Thomas R. Mackinson*, for respondent.

OPINION

HOLMES, *Judge*: Agro-Jal Farming Enterprises, Inc. is a farming corporation in Santa Maria, California that grows strawberries and vegetables. When it harvests them, it uses field-packing materials—plastic clamshell containers for the strawberries and cardboard trays and cartons for the other produce. Agro-Jal has always used the cash method of accounting for these materials—which means that it deducts their full purchase price in the year it buys them instead of deducting them bit-by-bit as they are used. The Commis-

---

[1] In an order dated September 21, 2011, we consolidated docket Nos. 15102–10, 15103–10, 15114–10, 15115–10, 3924–11, 3925–11, 3926–11, and 3927–11 for trial, briefing, and opinion. This opinion decides summary-judgment motions in only two of these cases, Nos. 15103–10 and 3924–11.

sioner insists that Agro-Jal may deduct the cost of only those field-packing materials that it actually uses each tax year, and that it must defer deduction of the rest. Agro-Jal disagrees. Who is right depends on our interpretation of section 464 of the Code and section 1.162–3 of the regulations. [2]

This is apparently an issue never before addressed by any court.

## *Background*

### I. *Agro-Jal's Business*

Agro-Jal was incorporated in 1996, but it is still in many ways the Maldonaldo family farm, whose patriarch founded it many years ago. The business has grown greatly over the years, and most of its income now comes from the efficient production of a few crops—strawberries, broccoli, cauliflower, iceberg and romaine lettuce, and celery. It is a year-round business but somewhat unpredictable because of the farmer's oldest adversary, the weather, as well as fluctuations in market demand.

Strawberry plants can produce several crops before they decline in productivity, so Agro-Jal plants new strawberry plants each October and harvests their fresh fruit between March and June, picks and freezes strawberries between July and August, and passes through the fields for a last crop of fresh fruit a year later between October and December. Broccoli and cauliflower come in throughout the year about 90 to 110 days after planting, and harvesting takes about two weeks at the end of each cycle. Lettuce is more regular: planted each January and harvested about 24 weeks later during a frantic seven days. Celery is also regular, sown in September and October and harvested during May and June.

California's climate lets Agro-Jal stay busy planting and harvesting throughout the year, and once each crop fully matures, Agro-Jal has to be ready with the right combination of trays, cartons, and clamshell containers to pack the produce and get it to market.

---

[2] Unless we say otherwise, all section references are to the Internal Revenue Code (Code) in effect for the years in issue.

Agro-Jal does not just cut and pile produce when the time comes—its workers go into the field to trim, inspect, grade, and pack it. They pack fresh strawberries into prelabeled plastic clamshells in various sizes (pint, one pound, two pounds, etc.) and then place the clamshells in preassembled cardboard trays. These clamshells aren't exotic—they're identical to what shoppers find when they buy strawberries at the local grocery store. But they are very important to Agro-Jal because packing in the fields drastically reduces processing times, lets cool air move through the packages and chill the product before it is shipped, and allows ethylene gas to escape. (Ethylene gas speeds ripening, which shortens shelf life.) Harvesting strawberries destined to be frozen is very similar, but with the additional step of loading the berries into large freezer bins for transport. Agro-Jal's other produce is bundled up, marked by size or weight, and packed into cardboard cartons, cardboard trays, and plastic wrappers. Workers then transport all the crops to a cooling facility; and because everything Agro-Jal sells is perishable, there is only so much time to get everything done. Packaging produce quickly is an important part of the process, and Agro-Jal's ability to pack quickly would be significantly weakened if it didn't keep field-packing materials on hand.

Regulations lengthen the lead time for getting field-packing materials out to the field. The labels for all the packing materials must identify the product, its brand name, Agro-Jal's name as the grower and shipper, the country of origin, the weight, the UPC, and other relevant or required information. Agro-Jal can't just buy bare boxes. It must allow enough time to contract for materials that meet all the various federal and state laws on labeling and packaging. This means customization, and Agro-Jal has to wait between two and four months for delivery once it places an order. Agro-Jal buys in bulk and regularly prepays for large quantities to ensure crops don't spoil for want of packaging. This makes it less likely that Agro-Jal will be delayed during the small window in which it must harvest, pack, cool, and ship produce.

## II. *Agro-Jal's Accounting*

One of the complications of deciding these motions is that Agro-Jal uses the cash method for its tax accounting but the

accrual method for its financial statements. The company is a large operation that needs bank financing, and its banks want statements that use generally accepted accounting principles (GAAP). This meant that Agro-Jal took physical inventories of its field-packing materials at the end of each year before us.

Agro-Jal's year-end records enabled the parties to stipulate the total amount paid for field-packing materials each year, the portion of the costs of those materials bought and used during the year, the portion paid for and received but not used, and the portion that it had paid for but not yet received. (The parties agree that Agro-Jal always received and used any materials in this last category by the end of the next year.) Here's a table for the tax years at issue:

| Year | Purchased and not delivered | Purchased and not used | Purchased and used | Total amount used | Total amount purchased |
|---|---|---|---|---|---|
| 2005[1] | $1,300,000 | $554,296 | $151,551 | $151,551 | $2,005,847 |
| 2006 | 2,020,000 | 467,207 | 1,280,312 | 3,134,608 | 3,767,519 |
| 2007 | 1,770,000 | 488,124 | 1,532,927 | 4,020,134 | 3,791,051 |
| 2008 | 775,000 | 486,168 | 2,073,928 | 4,332,052 | 3,335,096 |

[1] Agro-Jal's 2005 tax year isn't at issue here. But we include it because Agro-Jal bought supplies in 2005 that it didn't use until 2006.

But even though Agro-Jal prepared financing statements using GAAP, it kept its tax accounts—beginning with its first tax year in 1996 and for every tax year afterward—according to the cash method of accounting. Under the cash method, a taxpayer includes all income for the tax year in which it's received, and deducts all expenses for the tax year in which they are paid. *See* secs. 446(c)(1), 461(a); secs. 1.446–1(c)(1)(i), 1.461–1(a)(1), Income Tax Regs. This means that Agro-Jal deducts the full amount it spends on field-packing materials for the year it buys them, even if it doesn't use them all or even receive them.

The Commissioner concedes that Agro-Jal's packing materials are deductible expenses, and that Agro-Jal is generally entitled to use the cash method. But he challenges the timing of Agro-Jal's deductions.

Both parties have moved for partial summary judgment on this question. There are no factual disputes, and the parties agree that this Court's construction of section 464 and section 1.162–3, Income Tax Regs., will lead to granting one of

the two motions. The issue is one of considerable interest to farmers generally.

## *Discussion*

### I. *Principles of Farm Accounting*

Cash-method taxpayers generally can deduct their expenses for the year in which they pay them. *See* sec. 461(a); sec. 1.461–1(a)(1), Income Tax Regs. And Agro-Jal is surely right that farmers have been allowed to choose the cash method of accounting for a long time. The Supreme Court itself has blessed the practice as "an historical concession by the Secretary and the Commissioner to provide a unitary and expedient bookkeeping system for farmers and ranchers in need of a simplified accounting procedure." *See United States v. Catto*, 384 U.S. 102, 116 (1966). Farmers have both business and tax reasons to prepay for supplies— they may get to take advantage of earlier deductions, receive more favorable prices, and speed up harvesting. *See Commissioner v. Van Raden*, 650 F.2d 1046, 1049 (9th Cir. 1981), *aff'g* 71 T.C. 1083 (1979). There are a few limits—a prepayment must actually be a payment and not a deposit, *see, e.g.*, *Lillie v. Commissioner*, 45 T.C. 54, 63 (1965), *aff'd*, 370 F.2d 562 (9th Cir. 1966); Rev. Rul. 79–229, 1979–2 C.B. 210, and the materials or supplies must be used within the next year to avoid an argument about whether the expense needs to be capitalized, *see, e.g.*, *Zaninovich v. Commissioner*, 616 F.2d 429, 432 (9th Cir. 1980), *rev'g* 69 T.C. 605 (1978).

As is always the case with tax law, this general rule has a number of exceptions. Two concern us here. The first is section 464, which Congress enacted after noticing that rich people were buying investment packages that featured highly leveraged purchases of farm supplies. These deductions were typically taken by limited partnerships or subchapter S corporations[3] so that the expense could be distributed to the investor. Donald H. Kelley, Burnell E. Steinmeyer, & George G. Vinton, "Tax Accounting Rules for Farmers and

---

[3] Taxation of S corporations is under subchapter S of the Code. S corporations do not pay taxes themselves but rather pass through items of income and deduction to their shareholders. Sec. 1366(a)(1). Even though they don't pay taxes, however, S corporations do file information returns to report their income and deductions. *See* sec. 6037.

Ranchers," 31 S.D. L. Rev. 255, 261–62 (1986). Section 464 allowed investors substantial deductions with no offsetting income. *Id.* The Senate noted that "[f]arm tax benefits have been effectively packaged and sold to high-bracket taxpayers * * * for investments in cattle feeding and breeding, tree crops, vegetable and other field crops, vineyards, dairy cows, fish, chickens, and egg production." *See* S. Rept. No. 94–938(I), at 54 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3438, 3490.

Section 464 restricts "farming syndicates" from deducting "feed, seed, fertilizer, or other similar farm supplies" earlier than for the year that those supplies are "actually used or consumed." Congress's target was taxpayers primarily motivated by a desire to shelter income—not those motivated by profit. *Id.* at 58, *reprinted in* 1976 U.S.C.C.A.N. at 3494. Indeed, the Senate hoped the changes would "improve the competitive position of full time farmers." *Id.*

Both parties agree that this section does not directly apply to Agro-Jal,[4] but both also argue that the section helps us figure out the meaning of the regulation that does.

The regulation that's in play is section 1.162–3, Income Tax Regs. (as it was written in the years at issue),[5] and especially its first sentence, which reads:

---

[4] Section 464 limits the ability of only "farming syndicates" and those who are not "qualified farm-related taxpayers" to use the cash method. The section defines a "farming syndicate" to be: (A) "a partnership or any other enterprise other than a corporation which is not an S corporation engaged in the trade or business of farming, if at any time interests in such partnership or enterprise have been offered for sale in any offering required to be registered with any Federal or State agency having authority to regulate the offering of securities for sale" or (B) "a partnership or any other enterprise other than a corporation which is not an S corporation engaged in the trade or business of farming, if more than 35 percent of the losses during any period are allocable to limited partners or limited entrepreneurs." *See* sec. 464(c)(1). Excess prepaid farm supplies will be treated in the same manner as if the taxpayer were a farming syndicate if the taxpayer "(A) does not use an accrual method of accounting, (B) has excess prepaid farm supplies for the taxable year, and (C) is not a qualified farm-related taxpayer." *See* sec. 464(f)(1) and (2).

The Commissioner and Agro-Jal agree that Agro-Jal does not fall under section 464(c) and (f).

[5] Section 1.162–3 has since been superseded (first in 2012 by a temporary regulation and then by a permanent regulation) and now contains substantially different language. T.D. 9636, 2013–43 I.R.B. 331. We base

Taxpayers carrying materials and supplies on hand should include in expenses the charges for materials and supplies *only in the amount that they are actually consumed and used* in operation during the taxable year for which the return is made, *provided that* the costs of such materials and supplies have not been deducted in determining the net income or loss or taxable income for any previous year. [Sec. 1.162–3, Income Tax Regs.; emphasis added. [6] ]

Both parties also analyze what caselaw there is on the subject. Nothing's directly on point, but the Ninth Circuit, to which this case is appealable, *see* sec. 7482, has spoken a couple times about the timing of farmers' deductions. Both *Zaninovich* and *Van Raden* acknowledge that farmers can use cash-method accounting—but that general proposition isn't disputed here. *See* sec. 1.471–6(a), Income Tax Regs. (expressly authorizing cash-method accounting). And what was disputed in *Zaninovich* and *Van Raden* was whether the farmers in those cases could deduct or had to capitalize prepaid rent and feed expenses. The Ninth Circuit created the "one-year rule" to solve that problem: "Under the 'one-year

our analysis on the regulation in effect for the 2006–08 tax years. That version may be found on online databases, such as HeinOnline.

[6] Agro-Jal doesn't meet the exception in the second sentence of section 1.162–3, which states: "If a taxpayer carries incidental materials or supplies on hand *for which no record of consumption is kept* or *of which physical inventories at the beginning and end of the year are not taken*, it will be permissible for the taxpayer to include in his expenses and to deduct from gross income the total cost of such supplies and materials as were purchased during the taxable year for which the return is made, provided the taxable income is clearly reflected by this method." (Emphasis added.) Agro-Jal fails the second italicized requirement because there is no dispute that it takes a year-end inventory of field-packing materials. It argues that its December 31 inventories are only year-end inventories, not inventories for the beginning of the following year. But there is nothing in the record on this motion, and Agro-Jal cannot reasonably argue, that an inventory taken at the very end of the year does not also reflect inventory at the very beginning of next year. We are confident that no intervening event renders the end-of-year inventory inapplicable as the beginning-of-year inventory for the next year.

Those year-end inventories also serve as a "record of consumption" of the firm's field-packing materials: Agro-Jal says that it doesn't keep a record of consumption of each field-packing item. But it's possible to compute consumption by taking inventory at the beginning of the year, adding new purchases, and subtracting inventory at the end of the year. Agro-Jal did keep records of each of those parts of the consumption equation, which means that it kept a record of consumption, and so fails the first italicized requirement.

rule' an expenditure is treated as a capital expenditure if it creates an asset, or secures a like advantage to the taxpayer, having a useful life in excess of one year," but "the 'one-year rule' is strictly applied to allow a full deduction in the year of payment where an expenditure creates an asset having a useful life beyond the taxable year of twelve months or less." *See Zaninovich*, 616 F.2d at 432; *Van Raden*, 650 F.2d at 1050 n.7.

The Commissioner does not argue that Agro-Jal has to capitalize the cost of its field-packing materials, which makes these cases not quite on point. He also points to *Hillsboro Nat'l Bank v. Commissioner*, 460 U.S. 370 (1983), in support of his position that materials and supplies may be deducted only as they are used or consumed. This case doesn't quite say that, either. Though Bliss Dairy had deducted the full cost of its cattle feed in the same tax year it bought it, and though the Court held in *Hillsboro* that the dairy's shareholders had to recognize income for receiving in liquidating distributions the feed that the dairy had deducted but hadn't used, the analysis was all about the tax-benefit rule. *Id.* at 397–402. The tax-benefit rule "tells us to look at the subsequent event * * * and ask: If that event had occurred within the same taxable year, would it 'have foreclosed the deduction?'" *Maines v. Commissioner*, 144 T.C. 123, 129 (2015); *see also Rojas v. Commissioner*, 901 F.2d 810 (9th Cir. 1990) (argument about tax-benefit rule, not a farm's entitlement to initial deduction), *aff'g* 90 T.C. 1090 (1988).

The only "subsequent event" here is that Agro-Jal keeps buying and using more field-packing materials every year. And the parties stipulated that Agro-Jal always uses its prepaid packing materials by the end of the following tax year—as it must, because they begin to deteriorate six to eight months after they're delivered. This case is just about the timing of deductions and not about the tax-benefit rule or capitalization-v.-expensing.

## II. *Summary of the Arguments*

The Commissioner argues that Agro-Jal must defer its deductions for field-packing materials until each clamshell, tray, carton, or wrapper is used or consumed. He would italicize the first clause of the first sentence of section

1.162–3, Income Tax Regs., which he argues sets up a general rule that every taxpayer must defer deductions for materials and supplies until the year he uses or consumes them:

*Taxpayers carrying materials and supplies on hand should include in expenses the charges for materials and supplies only in the amount that they are actually consumed and used in operation during the taxable year* for which the return is made, provided that the costs of such materials and supplies have not been deducted in determining the net income or loss or taxable income for any previous year. [Sec. 1.162–3, Income Tax Regs.; emphasis added.]

The Commissioner recognizes that tax law usually garnishes general rules with exceptions, but he argues that section 464 is the only exception to this general rule, and that section allows immediate deductions only for "feed, seed, fertilizer, or other similar farm supplies," when the amounts prepaid for these expenses don't account for more than 50% of all farming expenses during any three-year period. *See* sec. 464(a), (f). Agro-Jal doesn't spend that much on packing materials, but packing materials aren't "feed, seed, or fertilizer," and the Commissioner argues that we should narrowly construe the phrase "other similar farm supplies."

Agro-Jal has two counterarguments. The first assumes that the Commissioner's interpretations of section 464 and section 1.162–3, Income Tax Regs., are correct—that is, section 464 allows immediate deductions only for "feed, seed, fertilizer, and other similar farm supplies"—but Agro-Jal argues that field-packing materials are "other similar farm supplies" and thus deductible in the year of purchase. Its second argument is also textualist, but more complicated. It starts again with section 464 but to make a broader point— that the section's restriction on cash-method accounting for *farming syndicates* shows that tax law has a background rule that lets farmers who are not syndicates freely use the cash method for everything, at least everything used, as field-packing materials are, within a year. Agro-Jal reasons that section 464 is the only limit that the Code places on farmers' use of the cash method and, because section 464 concededly doesn't apply to it, the Code itself must be read to presumptively allow Agro-Jal to take its deduction for field-packing materials as it normally does—in the year it buys them. Next it tells us to look at the second clause of the first sentence of section 1.162–3—the one we didn't italicize above: "pro-

vided that the costs of such materials and supplies have not been deducted in * * * any previous year." Agro-Jal says that because it already legitimately deducted its materials and supplies in an earlier year—the year it bought them—it isn't required to defer its deduction until the year the supplies are used or consumed.

III. *Field-Packing Materials and Section 464*

We'll begin with a close look at section 464. Section 464 sets as a general rule for farming syndicates that "amounts paid for feed, seed, fertilizer, or *other similar farm supplies* shall only be allowed for the taxable year in which such feed, seed, fertilizer, *or other supplies* are actually used or consumed." Sec. 464(a) (emphasis added). The negative implication of section 464 is that nonsyndicate farmers, like Agro-Jal, that use the cash method can deduct feed, seed, fertilizer, or other similar farm supplies in the year of purchase. The Commissioner agrees that if Agro-Jal's packing materials are "feed, seed, fertilizer, or other similar farm supplies," then section 1.162–3 doesn't apply.

But the Commissioner doesn't think field-packing materials qualify because, he argues, the old canon of *ejusdem generis* tells us to limit the reach of "other similar farming supplies" to those like "feed, seed, and fertilizer." He says that means inputs of farm production, not useful materials. Agro-Jal disagrees, and argues that "other similar farm supplies" needs to be read broadly.

When a general word or phrase follows a list of more specific words, *ejusdem generis* tells us we should narrowly construe the general word or phrase to include only things that are akin to the specific words. *See United States v. Tobeler*, 311 F.3d 1201, 1205 (9th Cir. 2002); *see also Coleman v. Commissioner*, 76 T.C. 580, 589 (1981). That list of specific words here—feed, seed, fertilizer—evokes a class. We have to figure out how these terms are alike, and we have to agree with the Commissioner on this one: Feed and seed and fertilizer are alike in that each is an essential input to the growing of crops or the raising of livestock. None of the specified items is useful in any other part of a farm's operations—and specifically not in harvesting, transporting, or marketing. "Feed, seed, and fertilizer" is not an exhaustive list—

things like saplings and lime could be considered farm supplies that are similar to seeds and fertilizer, respectively. We don't doubt that Agro-Jal's field-packing materials are of critical importance to its harvesting process and its overall business operations. But the materials aren't critical to the growing of crops or the raising of livestock—which makes them not similar enough to the class of items described by the phrase "feed, seed, [or] fertilizer."

But section 464 does bolster Agro-Jal's argument indirectly, because the history of section 464 shows that before its enactment anyone in the farming business could immediately deduct prepaid expenses.[7] Seen against this backdrop, section 464 looks like it was aimed at both especially abusive taxpayers—"farming syndicates"—and to certain especially abused expenses—"feed, seed, fertilizer, or other similar farm supplies."[8]

## IV. *Timing Under Section 1.162–3*

Which brings us to what we think is the real kernel of applicable law on these motions—the first sentence of section

---

[7] *See, e.g.*, S. Rept. No. 94–938(I), at 54 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3438, 3489 ("Generally, in farming operations tax losses can be shown in early years of an investment because of (1) the opportunity to deduct, when paid, costs which in nonfarm businesses would be inventoried and deducted in a later year, (2) the ability to deduct, when paid, costs which should properly be capitalized."); *id.* at 52 ("The special inventory exception for farmers was adopted by administrative regulation more than fifty years ago. The primary justification for this exception was the relative simplicity of the cash method of accounting."); *id.* at 54 ("[U]nder the cash method of accounting, farm expenses are still deductible as they are paid.").

[8] The Blue Book seems to support this. *See* Staff of J. Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 192 n.7 (J. Comm. Print 1987), *available at* file:///U:/wp/Coffey/jcs–10–87.pdf ("Prepaid expenses of taxpayers [not restricted by section 464] may be deducted to the same extent as under prior law, without regard to the 50-percent limitation"). (The Blue Book is a collection of commentaries regarding recently passed tax laws. *United States v. Woods*, 571 U.S. ____, ____ 134 S. Ct. 557, 568 (2013). It is written by the staff of the Joint Committee on Taxation, but because it is written *after* the passage of legislation, it has no bearing on statutory interpretation. *Id.* Its weight is that of a law-review article. *Id.* Or maybe not. *See* sec. 1.6662–4(d)(3)(iii), Income Tax Regs. (recognizing Blue Book, and not law-review articles, as a form of "substantial authority" for the purpose of defending against a substantial-understatement penalty).)

1.162–3. It's so important that we'll give it a third reading here, albeit with different italicization:

Taxpayers carrying materials and supplies on hand should include in expenses the charges for materials and supplies only in the amount that they are actually consumed and used in operation during the taxable year for which the return is made, *provided that* the costs of such materials and supplies have not been deducted in determining the net income or loss or taxable income for any previous year. [Sec. 1.162–3, Income Tax Regs.; emphasis added.]

Much depends on the phrase "provided that." Agro-Jal contends that "provided that" is just a lawyerly synonym for "only if." Under this interpretation, Agro-Jal has to defer its deductions until it uses or consumes the field-packing materials "only if" it didn't deduct them in any prior year. Agro-Jal, as a cash-method taxpayer not constrained by section 464, will always have deducted the prepaid materials in the prior year because that's when it paid for them.

Agro-Jal is quite right that historical concessions as supported by references in caselaw, and with clear shadows cast by a section like 464, have created a general rule that farmers can use the cash method for supplies they use within a year of purchase. Agro-Jal even agrees with the Commissioner that section 1.162–3, Income Tax Regs., creates a significant exception to this general rule for materials and supplies. But Agro-Jal also says that this exception doesn't apply to cash-method taxpayers who meet the condition set forth in the "provided that" clause. If a taxpayer has already deducted costs of supplies for a prior year, he's not subject to the first clause. Agro-Jal says the second clause is important to ensure that a deduction is not taken twice by those using the cash method. The first sentence of section 1.162–3 in this reading merely emphasizes the need to bar a second deduction for the same supplies when a taxpayer actually uses them in a later year, but doesn't require taxpayers to defer deductions until consumption. Agro-Jal argues that its interpretation must be correct, because the "provided that" clause would be meaningless if it wasn't read as a conditional limit on the reach of the first clause.

The Commissioner agrees that section 1.162–3 is the controlling regulation here. But he says that the words "provided that" should be read as a "limitation or qualification to prevent a double deduction." He says Agro-Jal's reading of

the second clause deprives the first clause of any effect in the case of a cash-method taxpayer while his reading "gives meaning to the whole regulation and produces a logical result."

The Commissioner has to argue in other words that this "provided that" clause doesn't in fact create a condition for the application of an exception, but is doing something else. In an ancient case, *Schlemmer v. Buffalo, Rochester & Pittsburg Ry. Co.*, 205 U.S. 1, 10 (1907), the Supreme Court construed "provided" to create an exception, rather than a condition. We don't think that would make any difference. Whether "provided that" is an exception or a condition, the result is the same here—Agro-Jal would have to defer its packing-materials deduction, except when it already deducted the materials for a prior year. The Commissioner's interpretation is essentially trying to say that "provided that" means "in lieu of." This would require Agro-Jal to take its deductions when the materials are used or consumed "in lieu of" taking them in any prior year.

We think that the Commissioner's reading of the proviso is a stretch and that "provided that" means "on the condition that" or "if" and "with the understanding." *See, e.g.*, Webster's New Collegiate Dictionary 1001 (11th ed. 2008). And we hold that the "provided that" clause of section 1.162–3 means that materials and supplies must be deducted as they are used or consumed, *on the condition that* (or "only if", or "as long as") they haven't been deducted in any prior year. A cash-method taxpayer who immediately deducts supplies in the year of purchase will satisfy the first sentence of section 1.162–3 by not taking a second deduction when the materials or supplies are used in a later taxable year.

Each side warns us that the other's reading of the phrase would create surplusage. The surplusage canon holds that "it is no more the court's function to revise by subtraction than by addition" and most commonly prevents a statutory interpretation that would make a provision irrelevant. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174, 176 (2012).[9] Agro-Jal

---

[9] "If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions

Continued

argues that the Commissioner's interpretation deprives the *second* clause of any effect because there is no scenario in which a cash-method taxpayer could ever claim a deduction *before* the year of use. The Commissioner similarly argues that Agro-Jal's interpretation deprives the *first* clause of any effect because there is no scenario in which a cash-method taxpayer would have to defer its deduction *until* the year of use.

We agree with Agro-Jal. Agro-Jal's interpretation of section 1.162–3 could apply in three different scenarios. In the first a packing producer advances a cash-method taxpayer materials and supplies without immediate payment. Let's say that in December of year 1, a cash-method farmer receives and uses $100 of supplies payable 30 days later in January of year 2. Generally, under the cash method, the farmer would ordinarily deduct the supplies for year 2—the year he paid for them. *See* sec. 1.461–1(a)(1), Income Tax Regs. But under Agro-Jal's reading of section 1.162–3 the farmer can deduct the supplies in year 1—the year he used them. In this example, Agro-Jal's reading of section 1.162–3 permits deductions in the *earliest* possible year, without deferral or duplication.[10] In the second scenario a cash-method farmer both buys $100 of supplies and uses them in year 1. This time the farmer takes a deduction as he uses the supplies without taking the deduction twice because he didn't deduct them for a prior year. In the third scenario, the one we have here, the farmer pays for $100 of supplies in year 1 but uses them in year 2. He takes a deduction for year 1 under the cash method, but when he uses the supplies in year 2 he doesn't double-dip because he's already deducted the supplies in year one. The "provided that" clause says he doesn't deduct them when he uses them because he deducted them for a prior year. Agro-Jal's interpretation would give both clauses meaning, depending on the different years in which a taxpayer buys and uses his supplies.

---

with some independent operation, the latter should be preferred." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174, 176 (2012).

[10] Though it is possible that *regularly* doing so might cause the Commissioner to argue that the taxpayer's accounting system is distorting his income. *See* Rev. Rul. 78–382, 1978–2 C.B. 111.

Whereas Agro-Jal's interpretation gives effect to both clauses, the Commissioner's interpretation renders the second clause surplusage in every example.[11] Under the Commissioner's reading, a cash-method taxpayer who uses supplies in year 1 but pays in year 2 gets a deduction only for the year of use; if he buys and uses supplies in the same year, he gets a deduction only for the year of use; and if he buys supplies in year 1 but uses them only in year 2, he gets a deduction only for the year of use. A cash-method taxpayer could not, in other words, ever deduct supplies for a year other than the one in which he uses them. The first clause would always apply and render the "provided that" clause surplus.

But there's another wrinkle—section 1.162–3 doesn't say "any" or "all" materials and supplies. It instead governs only materials and supplies that taxpayers carry "on hand." Let's go back to the block quote for a fourth time, with yet another bit italicized:

> Taxpayers carrying materials and supplies *on hand* should include in expenses the charges for materials and supplies only in the amount that they are actually consumed and used in operation during the taxable year for which the return is made, provided that the costs of *such materials and supplies* have not been deducted in * * * any previous year. [Sec. 1.162–3, Income Tax Regs.; emphases added.]

The first question is what "on hand" means. Agro-Jal says it includes materials and supplies that are prepaid and have been delivered but haven't yet been consumed. Materials and supplies that have been ordered, but haven't yet been delivered, are not "on hand." The Commissioner takes a much more expansive view: He says "on hand" includes items that've been purchased and are expected to arrive at a later

---

[11] Well, maybe not every example. Although the Commissioner didn't rely on it, the second sentence of section 1.162–3 allows a deduction for the year purchased of "incidental materials or supplies on hand for which no record of consumption is kept or of which physical inventories at the beginning and end of the year are not taken." *See supra* note 2. Such purchases might be covered by the part of the regulation's first sentence after the "provided that," but a taxpayer would get current deductibility under the second sentence only if he didn't keep a record of his consumption of these supplies. The first sentence assumes that the materials and supplies governed by it have records of the "amounts that they are actually consumed." The two sentences thus seem to address different situations entirely.

date—even if those items haven't even been manufactured yet. [12] We agree with the Commissioner that "on hand" might conceivably include more than just those supplies that are actually, currently physically present and immediately accessible. See, for example, Webster's New Collegiate Dictionary 564, defining "on hand" as including "present possession" and "about to appear" (e.g., cartons en route to the farm, or cartons in a locked shed on a day when the only Maldonaldo with a key is off the farm giving a speech). But we'll deal with those hypotheticals if and when they become real—any principle that they stand for doesn't extend so far as to include supplies for which delivery is still months away or yet to be made, just those already actually physically present or those imminently about to arrive.

More important is how the phrase "on hand" affects the meaning and scope of section 1.162–3. Section 1.162–3 governs only materials and supplies "on hand." Materials and supplies not on hand do not seem to be governed by section 1.162–3 at all. And this means that the regulation cannot under any plausible reading say exactly what the Commissioner argues—namely, that Agro-Jal can't deduct *any* of the field-packing materials that it has paid for and not yet used.

## V. *Conclusion*

Agro-Jal can deduct its field-packing materials for the year it bought them. The materials that it buys that are not "on hand" are governed by the general rules of cash-method accounting, which allow current deduction. The materials that it buys that are "on hand" are governed by section 1.162–3, which we hold does not require a cash-method taxpayer to defer its deductions until the materials are used or consumed, if the taxpayer deducted their costs for a prior tax year. The "one-year rule"—the rule that a taxpayer has to use those supplies within an approximately one-year period—might limit deductibility in some other case.

---

[12] We asked Commissioner's counsel at oral argument:

Q: [Y]ou're saying that even when the oil is still in the ground out of which the plastic is made, it's "on hand" for purposes of the first sentence of 162–3?

A: Yes, I think you would have read it a little bit broader than just the physical term of "on hand."

But not here. [13]

> *An appropriate order will be issued granting petitioners' motion and denying respondent's motion.*

---

[13] *See Zaninovich*, 616 F.2d at 432 n.6 ("While the 'one-year rule' is strictly applied to allow a full deduction in the year of payment where an expenditure creates an asset having a useful life beyond the taxable year of twelve months or less, it is not applied in the same manner in the other direction. Where an expenditure creates an asset having a useful life beyond the taxable year of more than twelve months, the 'one-year rule' has been used as a guidepost only, and not as a rigid rule requiring automatic capitalization of every expenditure which creates an asset having a useful life in excess of one year. *See, e.g.*, *Jack's Cookie Co. v. United States*, 597 F.2d 395, 405 (4th Cir. 1979); *United States v. Wehrli*, 400 F.2d 686, 689 (10th Cir. 1968).").