THEODORE A. FREDERICK, ET AL.,[1] PETITIONERS
*v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket Nos. 15540–92, 15541–92, 15542–92.          Filed July 21, 1993.

*Donald J. Bell,* for petitioners.
*Paul L. Dixon,* for respondent.

LARO, *Judge:* Theodore A. Frederick, Clare Frederick, and Arthur C. Frederick separately petitioned this Court for a redetermination of respondent's determination of a deficiency in their respective 1986 Federal income tax liability (hereinafter, Theodore A. Frederick, Clare Frederick, and Arthur C. Frederick are collectively referred to as petitioners, and separately referred to as Theodore, Clare, and Arthur, respectively). Following a joint motion by petitioners under Rule 141(a),[2] the three cases resulting from these petitions were consolidated into a single case for trial, briefing, and opinion. Pursuant to Rule 122(a), petitioners and respondent submitted the case to the Court without trial on the basis of the pleadings and the facts recited in a joint stipulation, with accompanying exhibits.

---

[1] Cases of the following petitioners are consolidated herewith: Clare Frederick, docket No. 15541–92; and Arthur C. Frederick, docket No. 15542–92.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1986, the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioners' Federal income tax for the 1986 taxable year as follows:

Theodore A. Frederick
  Docket No. 15540–92 ......................................................... $42,037
Clare Frederick
  Docket No. 15541–92 ......................................................... 40,956
Arthur C. Frederick
  Docket No. 15542–92 ......................................................... 25,700

The sole issue for decision is whether petitioners must include in income a recovery of interest expense by an S corporation,[3] in which they were shareholders, when the interest expense was deducted by the corporation when it was governed by the rules of subchapter C.[4] We agree with respondent that petitioners must include this recovery in income.

### FINDINGS OF FACT

At the time they filed their respective petitions in this case, Theodore and Clare resided in Redondo Beach, California, and Arthur resided in Hermosa Beach, California. The facts in the joint stipulation and accompanying exhibits submitted in this case are incorporated herein by this reference.

Quanta Investment Corp. (Quanta) was incorporated under the laws of the State of California on December 22, 1977. Quanta was originally formed as a C corporation, and operated as a C corporation until its 1986 taxable year. Effective with its 1986 taxable year, Quanta made an election to be treated as an S corporation. At that time, and throughout its 1986 taxable year, petitioners were the only shareholders of Quanta; Theodore and Clare each owned 37.5 percent of the outstanding shares, and Arthur owned 25 percent.

Quanta was an accrual method taxpayer in the year at issue engaged in the management of real property. Quanta

---

[3] The term "S corporation" means a qualifying corporation that has properly elected to be subject to subch. S of ch. 1 of subtit. A of the Internal Revenue Code, secs. 1361-1379. Sec. 1361(a)(1). The term "C corporation" means a corporation which is not an S corporation. Sec. 1361(a)(2).

[4] In the notice of deficiency issued to petitioner Theodore A. Frederick (Theodore), respondent determined that Theodore was not entitled to a deduction of $2,160 for two exemptions claimed on his 1986 Federal income tax return. Theodore has not listed this determination in his petition as an assignment of error. Therefore, Theodore has conceded this determination, and we will not consider it. Rule 34(b)(4); *Jarvis v. Commissioner*, 78 T.C. 646, 658 n.19 (1982); see also *Merlino v. Commissioner*, T.C. Memo. 1993-200.

also was the general partner of Admiral Investment, Ltd. (Admiral), a California limited partnership. Admiral was an accrual method taxpayer.

In 1980, Admiral borrowed $548,753 from Theodore and $838,130 from Kenneth Komick (Komick). At that time, and throughout the year at issue, Theodore and Komick were partners of Admiral. The loan documents underlying these borrowings required Admiral to pay interest at the rate of 9 percent per annum, payable in quarterly payments, and to pay the entire amount of these borrowings on or before February 6, 1992. For its taxable years 1980, 1981, and 1982, Admiral deducted a total of $312,048 of accrued but unpaid interest with respect to these borrowings. A portion of these accrued interest deductions was passed through to Quanta, and reduced Quanta's taxable income for its taxable years 1980, 1981, and 1982 by a total of $218,434.

In 1986, Admiral determined that the $312,048 of accrued but unpaid interest owed to Theodore and Komick would never be paid. Accordingly, Admiral "recovered" as income on its 1986 Form 1065, U.S. Partnership Return of Income, the $312,048 of interest deductions relating to this accrued interest. In accordance with the operating rules of section 702(a)(7) and section 1.702-1(a)(8)(i), Income Tax Regs.,[5] $218,434 of this income was passed through to Quanta. This amount was reported by Quanta on its 1986 Form 1120S, U.S. Income Tax Return for an S Corporation, as "other income". Quanta also reported on this form, and passed through to petitioners, an interest deduction in the same amount. This interest deduction did not represent an actual interest expense, but merely was an accounting entry made to neutralize the pass-through of the recovered interest deductions to petitioners, Quanta's shareholders, under the operating rules of section 1366(a).[6] Neither Theodore, Clare,

---

[5] Sec. 702(a)(7) generally provides that "In determining his income tax, each partner shall take into account separately his distributive share of the partnership's * * * other items of income, gain, loss, deduction, or credit, to the extent provided by regulations prescribed by the Secretary".

The regulations prescribed under sec. 702(a)(7) provide that "Each partner shall take into account separately, as part of any class of income, gain, loss, deduction, or credit, his distributive share of the following items: recoveries of bad debts, prior taxes, and delinquency amounts (section 111)". Sec. 1.702-1(a)(8)(i), Income Tax Regs.

[6] Sec. 1366(a) provides:

SEC. 1366(a). DETERMINATION OF SHAREHOLDER'S TAX LIABILITY.—

nor Arthur reported any of this accrued interest recovery on his or her 1986 Federal individual income tax return.

On May 18, 1992, respondent issued separate notices of deficiency to petitioners. These notices reflected an increase in Theodore's, Clare's, and Arthur's distributive shares of income from Quanta by $81,913, $81,913, and $54,608, respectively. Respondent made these increases to account for the share of Admiral's recovery of the accrued interest deductions, which respondent determined should have been passed through to petitioners, via Quanta, and reported on their respective individual income tax returns.

## OPINION

Subchapter S of chapter 1 of subtitle A of the Internal Revenue Code allows the shareholders of a qualifying C corporation to elect a pass-through system under which corporate income, losses, deductions, and credits are passed through and directly attributed to the shareholders. *Bufferd v. Commissioner,* 506 U.S. ___, 113 S. Ct. 927, 928-929 (1993).

Petitioners argue that, although part of Admiral's recovery of the accrued interest deductions ultimately passed through to them as shareholders of an S corporation, they were permitted to exclude this interest recovery from their 1986 gross income under the exclusionary component of the tax-benefit rule, including section 111(a); the tax benefit from the accrued interest deductions was received by the C corporation, and not them. Section 111(a) provides that "Gross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter."

---

(1) IN GENERAL.—In determining the tax under this chapter of a shareholder for the shareholder's taxable year in which the taxable year of the S corporation ends * * *, there shall be taken into account the shareholder's pro rata share of the corporation's—

    (A) items of income (including tax-exempt income), loss, deduction, or credit the separate treatment of which could affect the liability for tax of any shareholder, and

    (B) nonseparately computed income or loss.

      \*      \*      \*      \*      \*      \*      \*

(2) NONSEPARATELY COMPUTED INCOME OR LOSS DEFINED.—For purposes of this subchapter, the term "nonseparately computed income or loss" means gross income minus the deductions allowed to the corporation under this chapter, determined by excluding all items described in paragraph (1)(A).

At most, petitioners also argue, the interest recovery results in an increase to Quanta's earnings and profits account. Thus, future distributions from Quanta will constitute taxable dividends to petitioners to the extent that those distributions are greater than Quanta's accumulated adjustments account, and less than (or equal to) Quanta's earnings and profits account.[7]

Petitioners cite no authority for their tax benefit argument. Petitioners contend, however, that the tax-benefit rule is an equitable principle with sufficient elasticity to allow this Court to stretch the rule to engulf new and different circumstances such as the facts at hand.

Respondent, on the other hand, counters that petitioners must include the recovered interest expenses in their income pursuant to the inclusionary component of the tax-benefit rule, and by operation of sections 702(a)(7) and 1366(a). More specifically, respondent argues, Admiral correctly applied the tax-benefit rule when it recovered the $312,048 of accrued but unpaid interest, and reported it as income on its 1986 Form 1065. As a result of this application, and by operation of section 702(a)(7), Quanta's distributive share of income from Admiral increased by $218,434. Then, by operation of section 1366(a), petitioners, as shareholders of an S corporation, received their passed-through shares of the recovered interest expenses, and these amounts must be included in their respective incomes.

Income and expenses are reported for Federal income tax purposes on the basis of the taxpayer's annual accounting period. Sec. 441(a) and (b); *Security Flour Mills Co. v. Commissioner,* 321 U.S. 281 (1944); *Burnet v. Sanford & Brooks Co.,* 282 U.S. 359 (1931). Generally, this period is the 12-month period in which the taxpayer regularly computes income in keeping his or her books. Sec. 441(c). An annual accounting period is an integral part of our Federal income tax system; our Government must produce revenue which is ascertainable and payable at fixed and relatively short periods of time. Only by such a tax system is it practical to produce a constant flow of income to defray public expenses,

---

[7] With respect to this argument, petitioners are mistaken. Adjustments to the earnings and profits of an S corporation are only allowed in limited situations, none of which fits the facts at hand. See sec. 1371(c)(1). Accordingly, we dispose of this argument without further discussion.

and apply methods of accounting, assessment, and collection capable of practical operation. *Hillsboro Natl. Bank v. Commissioner,* 460 U.S. 370, 377 (1983); *Burnet v. Sanford & Brooks Co., supra* at 365. As best stated by the Supreme Court: "taxes are the life-blood of government and their prompt and certain availability an imperious need." *Bull v. United States,* 295 U.S. 247, 259 (1935).

Strict adherence to an annual accounting period, however, may create transactional inequities. For example, the reporting of a transaction in one year may be rendered inaccurate in a subsequent year because an unexpected event in the later year may reopen the otherwise closed transaction. *Hillsboro Natl. Bank v. Commissioner, supra* at 377. In such a case, a taxpayer should not be able to utilize a Government exigency—its need to close transactions on a yearly basis to produce an annual flow of revenue—to establish an inequitable and distorted picture of his or her income for Federal income tax purposes.[8]

These offsetting considerations—the use of a fixed accounting period to produce annual revenue versus the possibility of transactional inequities—spawned the tax-benefit rule. The tax-benefit rule is a judicially developed doctrine designed to ameliorate some of the inflexibilities of the annual accounting period and approximate the results produced by a tax system based on transactional rather than annual accounting. *Id.* at 381.

The tax-benefit rule consists of two components, the inclusionary component and the exclusionary component. *Hudspeth v. Commissioner,* 914 F.2d 1207, 1212 (9th Cir. 1990), revg. and remanding on another issue T.C. Memo. 1985-628; see also *Hillsboro Natl. Bank v. Commissioner, supra* at 380-381 n.12. The exclusionary component, which is partially codified in section 111(a), but which may exist outside the provisions of that section, *Hillsboro Natl. Bank v. Commissioner, supra* at 388; *Dobson v. Commissioner,* 320

---

[8] In *Hillsboro Natl. Bank v. Commissioner,* 460 U.S. 370, 377-380 (1983), the Supreme Court illustrated the inequities of the annual accounting period through an example of a taxpayer who held a note that apparently became uncollectible early in the taxable year. If the debtor unexpectedly paid the debt in that year, the Court stated, the transactions involving the note would be nontaxable because the receipt of the repayment would be a return of capital to the creditor/taxpayer. If, however, the unexpected repayment came in the next year, the taxpayer would have a bad debt deduction in the earlier year, see sec. 166(a), and, absent the tax-benefit rule, no tax effect in the later year; once again, the receipt would be a return of capital.

U.S. 489, 505-506 (1943), does not become an issue unless, and until, the inclusionary component of the rule is first satisfied. The inclusionary component provides that an amount deducted from gross income in one year is included in income in a subsequent year if an event occurs in the subsequent year that is fundamentally inconsistent with the premise on which the deduction had previously been based. *Hillsboro Natl. Bank v. Commissioner, supra* at 372; *Hudspeth v. Commissioner, supra* at 1212.[9] The exclusionary component of the tax-benefit rule, by contrast, eats away at the inclusionary component by limiting the income that must be recognized in the subsequent year to the amount of the tax benefit that resulted from the deduction. *Hillsboro Natl. Bank v. Commissioner, supra* at 388; *Hudspeth v. Commissioner, supra* at 1212. Thus, to summarize the tax-benefit rule, an amount must be included in gross income in the current year if, and to the extent that: (1) The amount was deducted in a year prior to the current year, (2) the deduction resulted in a tax benefit, (3) an event occurs in the current year that is fundamentally inconsistent with the premises on which the deduction was originally based, and (4) a nonrecognition provision of the Internal Revenue Code does not prevent the inclusion in gross income. A current event is considered fundamentally inconsistent with the premises on which the deduction was originally based when the current event would have foreclosed the deduction if that event had occurred within the year that the deduction was taken. *Hillsboro Natl. Bank v. Commissioner,* 460 U.S. 370, 383-384 (1983).

The parties do not dispute that: (1) An amount was properly deducted in a prior year, (2) the event that occurred in the year at issue (the current year) was fundamentally inconsistent with the premise on which the deduction was originally taken, and (3) a nonrecognition provision of the Internal Revenue Code does not prevent the inclusion in

---

[9] The inclusionary component of the tax-benefit rule, and not the exclusionary component, was at issue in *Hillsboro Natl. Bank v. Commissioner,* 460 U.S. 370 (1983). In *Hillsboro,* the Hillsboro Bank paid State taxes and deducted them when paid, pursuant to sec. 164(e). Later, the State refunded the taxes directly to the bank's shareholders. The Government sought to include the shareholders' refund of the State taxes in the income of the bank. *Id.* at 372-374. The Supreme Court concluded that "unless a nonrecognition provision of the Internal Revenue Code prevents it, the tax-benefit rule ordinarily applies to require the inclusion of income when events occur that are fundamentally inconsistent with an earlier deduction." *Id.* at 372.

gross income. The disagreement is whether the prior deduction resulted in a tax benefit. Petitioners have the burden of proving that the deduction did not result in a tax benefit. Rule 142(a); *Welch v. Helvering,* 290 U.S. 111, 115 (1933).

Petitioners have introduced no evidence into the record to establish that a tax benefit was not received from the deductions for the accrued but unpaid interest. In fact, the record shows to the contrary; the parties stipulated that these interest deductions reduced Quanta's taxable income by $218,434. It is well settled that an accrual-method taxpayer that accrues and deducts an expense in one year, before it is actually paid, must recover the expense in a later year in which it is determined that the amount will never be paid. See, e.g., *Hillsboro Natl. Bank v. Commissioner,* 460 U.S. at 381-382, and the cases cited therein.

Petitioners argue, without citation, that a recovery does not constitute taxable income if the recovery of a prior deduction would be taxed to a person different than the person that originally took the deduction. We disagree.[10] The basic purpose of the tax-benefit rule is to achieve rough transactional parity in tax and to protect taxpayers and the Government from the adverse effects of reporting a transaction on the basis of assumptions that an event in a subsequent year proves to have been erroneous. *Hillsboro Natl. Bank v. Commissioner, supra* at 383. The tax-benefit rule permits a "balancing entry" when a seemingly proper expense turns out to be improper. *Id.* at 389 n.24. Quanta accrued and deducted interest expense that eventually turned out not to be deductible. Absent the subchapter S election, petitioners, as shareholders of Quanta, would have no grounds for claiming that the recovery of the accrued interest deductions is not includable in Quanta's gross income. By voluntarily electing, and causing Quanta to elect, to be treated as an S corporation, petitioners not only reap the benefits of the S corporation election, but petitioners suf-

---

[10] At the outset, we note that the shareholders in *Hillsboro Natl. Bank v. Commissioner,* 460 U.S. 370, 374 n.2 (1983), were required to include the refund of the State taxes in their income although they were not the taxpayer that received the corresponding deduction for the State tax, or the tax benefit therefrom. We also note that the portion of the exclusionary component of the tax-benefit rule codified in sec. 111(a) explicitly allows an exclusion "to the extent * * * [that the prior deduction] did not reduce the amount of tax imposed by this chapter." Thus, sec. 111(a) does not condition its application on the taxation of the recovery to the same person that enjoyed the benefit of the deduction.

fer any accompanying burdens. The Internal Revenue Service would be severely prejudiced if an individual taxpayer operating his or her business as a C corporation could simply avoid recovery income merely by making an S corporation election.

Contrary to petitioners' belief, conversion from a C corporation to an S corporation does not create a new taxpayer or otherwise involve a transfer of assets and liabilities from one entity to another. Following its S corporation election, Quanta is still the same taxpayer; Quanta merely has subjected its income and expenses to a new taxing regime for Federal income tax purposes. Sec. 7701(a)(14) (a taxpayer is *"any person* subject to *any* internal revenue tax" (emphasis added)); see also secs. 1374 and 1375 (Quanta, as an S corporation, may be subject to certain capital gains and other taxes); sec. 7701(a)(1) (definition of "person").[11] Moreover, some States do not recognize the concept of an S corporation. Thus, a corporation in such a State may be considered an S corporation for Federal income tax purposes, and a C corporation for State income tax purposes.[12]

Although we agree with petitioners that the tax-benefit rule is sufficiently elastic for courts to incorporate new fact patterns, we believe that stretching the exclusionary component of the tax-benefit rule to accommodate the facts at hand would exceed the appropriate boundaries of the rule. When a C corporation elects to be treated as an S corporation, and the S corporation "recovers" an expense that was deducted by the prior C corporation, the exclusionary component of the tax-benefit rule applies at the entity level. In other words, if an S corporation recovers an expense that it deducted when it was a C corporation, this recovery will pass through to the

---

[11] This continuity of the same entity is further seen in other provisions of subch. S of ch. 1 of subtit. A of the Internal Revenue Code. For example, following a proper election to be treated as an S corporation, the retained earnings of the prior C corporation "carry over" to the S corporation. See secs. 1368(c), 1371(a), (c).

[12] This is particularly so in the instant case. Quanta was incorporated in California. In the year at issue, 1986, California did not recognize the concept of S corporations. Thus, to the extent that Quanta was subject to California income tax laws, Quanta was treated as a C corporation for, and subject to taxation under, the laws of California. Friedman, Cal. Prac. Guide: Corporations 2:120 (1987); see also Cal. Rev. & Tax. Code secs. 23800-23811 (West 1992) (S corporation provisions were added to the California Revenue and Taxation Code by 1987 Cal. Stat. ch. 1139, sec. 55, effective Sept. 27, 1987).

S corporation shareholders to the extent that the prior C corporation benefited from the initial deduction.

For the foregoing reasons,

*Decisions will be entered for respondent.*