147 T.C. No. 17

UNITED STATES TAX COURT

ESTATE OF STEVE K. BACKEMEYER, DECEASED, JULIE K.
BACKEMEYER, PERSONAL REPRESENTATIVE, AND JULIE K.
BACKEMEYER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10596-14.               Filed December 8, 2016.

Ps were husband and wife. H was a sole proprietor farmer. H purchased certain farm inputs in 2010 intending to use them to cultivate crops the following year. H, a cash-method taxpayer, deducted his expenditures on the inputs under I.R.C. sec. 162 for that same tax year. H died in March 2011 not having used any of the purchased farm inputs. They were subsequently transferred to W, who began her own farming business as sole proprietor upon H's death. W used all the farm inputs in 2011 to grow crops that were then sold in 2011 and 2012. W deducted for tax year 2011 an amount equal to the value of the farm inputs inherited from H.

Held: The tax benefit rule does not require the recapture upon H's death in 2011 of deductions he claimed for 2010 for his expenditures on the farm inputs.

Held, further, the I.R.C. sec. 6662 accuracy-related penalty for a substantial understatement of income tax does not apply, since Ps' deductions of the inputs under I.R.C. sec. 162 were appropriate, and the sole denied deduction conceded by Ps was not large enough to merit imposition of the penalty.

Timothy L. Moll, for petitioners.

Shaina E. Boatright and Douglas S. Polsky, for respondent.

OPINION

LARO, Judge: This case arises out of deductions claimed by Steve K. and Julie K. Backemeyer for tax years 2010 and 2011 for certain inputs purchased for and used in their farming businesses.[1] The case was submitted fully stipulated for decision without trial. See Rule 122.[2]

Respondent determined a deficiency in petitioners' Federal income tax for tax year 2011 of $78,387, along with a penalty under section 6662 of $15,864.

_____

[1]In farming, "inputs" generally refers to tangible personal property used in agricultural production, "such as seed, fertilizer, herbicides, and fuel." See Keig v. Keig, 826 N.W.2d 879, 884 (Neb. Ct. App. 2012).

[2]Unless otherwise indicated, section references are to the Internal Revenue Code (Code) applicable for the relevant years. Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by respondent on certain legal arguments he initially advanced, we decide the following issues:

(1) whether the tax benefit rule requires the recapture of deductions for farm inputs claimed by Mr. Backemeyer on his 2010 Schedule F, Profit or Loss From Farming, upon his death in 2011 and Mrs. Backemeyer's acquisition by inheritance of the farm inputs. We hold that it does not;

(2) whether the substantial understatement penalty under section 6662(a) and (b)(2) applies in this case. Since we have found petitioners' deductions appropriate, we hold that the penalty does not apply.

## Background

### I.    Overview

The parties submitted this case fully stipulated under Rule 122. The stipulations of fact and the facts drawn from stipulated exhibits are incorporated herein. Petitioners were residents of Greenwood, Nebraska. This case is appealable to the Court of Appeals for the Eighth Circuit absent stipulation of the parties to the contrary.

### II.    Petitioners' Background

Julie Backemeyer married Steve Backemeyer on October 7, 1977. Until his death, Mr. Backemeyer was a farmer who conducted his farming business as a sole

proprietor. Mrs. Backemeyer was employed full time by an insurance company as a claims representative.

In 2010 approximately 153 acres of farm real estate in Cass County, Nebraska, were titled in the name of Mr. Backemeyer. The 6-acre farmstead on which petitioners resided and approximately 200 acres of additional farm real estate in Cass County, Nebraska, were titled in the name of Mrs. Backemeyer. During the 2010 calendar year Mr. Backemeyer used all of the farm real estate owned by himself and Mrs. Backemeyer to grow corn and soybeans. He also rented additional farmland from third parties.

Mr. Backemeyer passed away on March 13, 2011.

III.     Mr. Backemeyer's Farming Activities in 2010 and 2011

Mr. Backemeyer incurred certain expenses in 2010 for the purchase of seed, chemicals, fertilizer, and fuel, inputs which he planned to use in his farming business in connection with planting crops in 2011. However, Mr. Backemeyer died before he was able to use any of these farm inputs. The farm inputs were listed in the inventory of Mr. Backemeyer's assets prepared by his estate, with the inputs' stated fair market value being equal to their purchase price.

Through receipts, petitioners have corroborated the following purchases of farm inputs:

(1)   herbicides invoiced from Greenwood Farmers Co-operative (Greenwood Farmers Co-op) for $93,674.43 on December 29, 2010;

(2)   seed corn and soybeans invoiced from Pioneer Hi-Bred International, Inc. (Pioneer Seed), for $49,708.40 (after a discount to the preliminary total of $57,940.36) on November 20, 2010;

(3)   seed corn and related treatment services invoiced from Channel BIO, LLC (Channel Hybrids), for $59,623.20 on November 12, 2010;

(4)   fertilizers, lime, and the application thereof, along with 3,000 gallons of diesel fuel, invoiced from Greenwood Farmers Co-op for $61,935 on December 29, 2010; and

(5)   fertilizer invoiced from Midwest Farmers Cooperative for $53,095.37 on December 31, 2010.

The inventory of Mr. Backemeyer's farm supplies on hand at the date of his death indicated the following items:

(1)   chemicals costing $20,769 from Greenwood Farmers Co-op/Midwest Farmers Cooperative, invoiced December 29, 2010, paid for by check No. 4407 on December 29, 2010;

(2)   seed costing $49,708.40 from Pioneer Seed, invoiced November 20, 2010, paid for by check No. 4379 on November 20, 2010; and seed costing

$57,302.70 from Channel Hybrids, invoiced November 12, 2010, paid for by check No. 4376 on November 12, 2010; for a total of $107,011.10;

(3) fertilizer costing $98,920 from Greenwood Farmers Co-op/Midwest Farmers Cooperative, invoiced December 29 and December 31, 2010, paid for by check No. 4407 on December 29, 2010; and

(4) fuel costing $8,790 from Greenwood Farmers Co-op, invoiced at an unspecified time, paid for by check No. 4407 on December 29, 2010.

In early January 2011, shortly before his death, Mr. Backemeyer sold all the grain he was holding from the 2010 crop year, resulting in farm income reported on line 3b of his 2011 Schedule F. Mr. Backemeyer's estate did not include an interest in any stored grain.

## IV. Mrs. Backemeyer's Farming Activities in 2011

Under the terms of Mr. Backemeyer's estate plans, upon his death in 2011 all of his interest in the farm inputs passed to the Backemeyer Family Trust, of which Mrs. Backemeyer was a trustee.

On July 27, 2011, Mrs. Backemeyer was appointed personal representative of the Estate of Steve K. Backemeyer, Deceased, in probate proceedings commenced in the County Court of Cass County, Nebraska. On February 28, 2013, Mrs. Backemeyer filed an informal closing statement with the Cass County

court. Under Nebraska law the personal representative continues in his duties one year beyond the filing of the closing statement in a probate matter. See Neb. Rev. Stat. Ann. sec. 30-2453(a) (LexisNexis 2016). Therefore, Mrs. Backemeyer needed to act to reopen Mr. Backemeyer's estate for purposes of this case, and on May 29, 2015, Mrs. Backemeyer's appointment as personal representative of the Estate of Steve K. Backemeyer was extended.[3]

After Mr. Backemeyer passed away, Mrs. Backemeyer became actively involved in farming to grow corn and soybeans on the farm real estate owned by petitioners and on the farm real estate for which Mr. Backemeyer had entered into rental arrangements for 2011 before his death.

During 2011 Mrs. Backemeyer took an in-kind distribution of the farm inputs from the Backemeyer Family Trust and used all of the inputs to grow corn

---

[3]During the course of the pretrial conference in this case, the parties had informed the Court that probate proceedings in the Cass County court at No. PR 11-68 regarding the Estate of Steve K. Backemeyer, Deceased, had been informally closed before the filing of the petition but after issuance of the notice of deficiency. The probate proceedings were reopened, however, for purposes of this case, because the petition had not been properly executed by a fiduciary or person authorized to act on behalf of the Estate of Steve K. Backemeyer, Deceased. This Court ordered that the fiduciary or person so authorized to act file a retroactive ratification of the petition on behalf of the Estate of Steve K. Backemeyer, Deceased, along with an appropriate document from the probate proceedings in the Cass County court authorizing the fiduciary or authorized person to act on behalf of the decedent. Mrs. Backemeyer in her role as personal representative ratified the petition on July 6, 2015.

and soybeans. The seed corn was planted in 2011. The chemicals and fertilizers and lime were applied in connection with growing corn and soybeans in 2011. And the diesel fuel was used to operate farm equipment and semitractor trucks during the 2011 crop year.

During 2011 Mrs. Backemeyer sold a portion of the crops grown that same year using the farm inputs and received taxable proceeds of $301,100 as reported on line 3b of her 2011 Schedule F. Mrs. Backemeyer did not claim any tax basis in the crops sold.

During 2012 Mrs. Backemeyer sold the balance of the crops grown in 2011 and received taxable proceeds of $758,301 as reported on line 3b of her 2012 Schedule F. No crops grown in 2012 were sold in 2012. Mrs. Backemeyer did not claim any tax basis in the crops sold in 2012. For tax year 2012, Mrs. Backemeyer filed an income tax return on Form 1040, U.S. Individual Income Tax Return, as a single taxpayer.

V. Petitioners' Tax Returns

A. Tax Year 2010

For tax year 2010 petitioners filed a joint income tax return on Form 1040. For that year Mr. Backemeyer reported as a cash method taxpayer the income and expenses of his farming activities on a Schedule F in his name. During

respondent's examination of petitioners' tax returns, Mrs. Backemeyer submitted an amended Form 1040 for tax year 2010 to the examiner. The examiner allowed an adjustment for prepaid farm expenses claimed on the amended Form 1040 for tax year 2010 to include an additional $52,505 expense for fertilizer and lime not included on the original Schedule F.

After the adjustment during examination, Mr. Backemeyer's 2010 Schedule F reported the following expenses related to his farming business: $20,769 for chemicals, $203 for custom hire (machine work), $107,011 for seeds and plants purchased, $98,920 for fertilizer and lime, and $8,790 for gasoline, fuel, and oil.

B.     Tax Year 2011

For tax year 2011 petitioners filed a joint income tax return on Form 1040. The 2011 return included two Schedules F, both of which reported income and expenses on the cash method. The first Schedule F reported Mr. Backemeyer's farming activities from January 1, 2011, until his death on March 13, 2011. The second Schedule F reported Mrs. Backemeyer's farming activities for the remainder of the year. During respondent's examination of petitioners' tax returns, petitioners submitted an amended Form 1040 for tax year 2011 to the examiner. The amended return reduced other farm income by $27,627, with $19,989 of that amount attributable to Mr. Backemeyer's Schedule F, and $7,638

attributable to Mrs. Backemeyer's Schedule F. This change reduced petitioners' taxable income by $6,881.

The 2011 Schedule F for Mrs. Backemeyer reported various farming expenses, including the following expenses in amounts equal to those reported on Mr. Backemeyer's 2010 Schedule F: $20,769 for chemicals, $203 for custom hire (machine work), $107,011 for seeds and plants purchased, $98,920 for fertilizer and lime, and $8,790 for gasoline, fuel, and oil.

C.    Petitioners' Concession

Petitioners claimed a deduction of $203 for custom hire on Mrs. Backemeyer's 2011 Schedule F. The deduction was the result of an accounting mistake or clerical problem with the tax return. Accordingly, petitioners admit that this $203 deduction was claimed in error and concede the adjustment.

VI.    Determination of Deficiency

Upon his audit of petitioners' tax returns, respondent determined that Mrs. Backemeyer was not entitled to deduct the following farm inputs on her 2011 Schedule F: $20,769 for chemicals, $203 for custom hire, $107,011 for seeds and plants purchased, $98,920 for fertilizer and lime, and $8,790 for gasoline, fuel, and oil. Denial of these deductions would increase petitioners' taxable income for 2011 by $235,693. Accordingly, respondent determined a deficiency of $78,387

and issued a notice of deficiency dated February 5, 2014. As noted above, petitioners have since conceded respondent's denial of the 2011 deduction of $203 for custom hire.

Respondent explained his denial of the deductions for farm inputs on Mrs. Backemeyer's 2011 Schedule F by stating in the notice of deficiency that "it has not been established that more than $80,249 was verified as a deductible farming expense, or was paid or incurred during the taxable year 2011." Respondent further explained that since petitioners "use the cash method for [their] farming activity, prepaid expenses that were paid in 2010 are deductible in 2010, and are not added to basis."

Respondent also determined an accuracy-related penalty under section 6662(a) of $15,864, on the grounds of a substantial understatement of income tax, a valuation misstatement, or negligence or disregard of rules or regulations. During the pretrial conference for this case, respondent agreed to limit the grounds for the accuracy-related penalty to a substantial understatement of income tax under section 6662(a) and (b)(2).

Discussion

I.     Overview

In his opening brief, respondent advanced several arguments on which he relied to demonstrate the impropriety of petitioners' tax treatment of farm inputs for tax years 2010 and 2011.  Respondent's primary contention was that allowing Mr. Backemeyer to deduct farm input expenses on his 2010 Schedule F, while allowing Mrs. Backemeyer to deduct expenses for the same farm inputs on her 2011 Schedule F, would amount to a double deduction and thereby contravene axiomatic principles of tax law.

In the alternative, were the Court to rule in favor of petitioners' deduction for 2011 of the farm input purchases, respondent requested that the deduction for farm inputs for 2010 be recaptured under the tax benefit rule, as in Tenn. Carolina Transp., Inc. v. Commissioner, 65 T.C. 440, 448 (1975), aff'd, 582 F.2d 378 (6th Cir. 1978).  In other words, were Mrs. Backemeyer's deduction of the farm inputs allowed on her 2011 Schedule F, under respondent's reasoning petitioners should be required to include in gross income on Mr. Backemeyer's 2011 Schedule F an equal amount.  Otherwise, respondent urged, "there would be a material distortion of income by allowing petitioners to deduct pre-paid expenses in 2010 and then allowing them to deduct these same expenses in 2011."

Respondent also argued that Mrs. Backemeyer was not entitled to a step-up in basis under section 1014 when she inherited the farm inputs from her late husband in 2011.

However, in his answering brief, respondent changed course. He stated that he believes the tax benefit rule controls the outcome in this case and therefore he is no longer asserting the other positions advanced in his opening brief. Accordingly, respondent conceded that Mrs. Backemeyer's treatment of the farm inputs was correct: She received the assets with a stepped-up basis and contributed them to her sole proprietor farming business, entitling her to deduct the farm inputs in the amount of the stepped-up basis when those assets are used in her business. Nonetheless, respondent maintains, the tax benefit rule requires the inclusion in Mr. Backemeyer's 2011 income of the prepaid expenses for the farm inputs he had deducted for 2010. Respondent cites Hillsboro Nat'l Bank v. Commissioner, 460 U.S. 370 (1983), consolidated on certiorari with Bliss Dairy, Inc. v. United States, as the authority governing the outcome of this case.

Furthermore, respondent conceded that Mrs. Backemeyer's Schedule F farming business should be treated as separate from Mr. Backemeyer's Schedule F farming business.

Since respondent conceded the propriety of Mrs. Backemeyer's deduction of the farm input expenses for tax year 2011, we also need not address petitioners' alternative argument that if Mrs. Backemeyer was not entitled to currently deduct the expenses for the inherited farm inputs, the stepped-up basis in the inputs should be allocated to the crops grown in 2011 for which the inputs were used.

In view of the above, the sole issue remaining for this Court's decision is whether the tax benefit rule requires the recapture for 2011 of farm input deductions claimed by Mr. Backemeyer on his 2010 Schedule F. As explained below, we find that the tax benefit rule does not so require where the inputs were transferred by reason of death.

II. The Parties' Arguments

A. Respondent's Argument

After conceding his other arguments, respondent's sole remaining argument is that the tax benefit rule should apply. Respondent points out that the tax benefit rule requires a taxpayer to include a previously deducted amount in his current year's income when an event occurs that is fundamentally inconsistent with the claimed deduction for the previous year. Respondent contends that Bliss Dairy, a U.S. Supreme Court case on the tax benefit rule, directly applies to the facts here.

Bliss Dairy, 460 U.S. at 374, involved a closely held corporation which used the cash method of accounting and engaged in the business of operating a dairy. Close to the end of its taxable year, the corporation deducted on purchase the full cost of cattle feed bought for use in its operations. Id. Shortly after the beginning of its next taxable year, with a substantial portion of the feed still on hand, the corporation liquidated and distributed its assets to its shareholders in a nontaxable transaction. Id. at 374-375. The shareholders continued operating the dairy business in noncorporate form and in turn deducted their basis in the feed as an expense of doing business. Id. at 376. The Supreme Court held that the liquidation of the corporation resulted in conversion of the cattle feed from a business to a nonbusiness use, representing an action inconsistent with the prior deduction and requiring application of the tax benefit rule. Id. at 395-402.

Respondent argues that the facts here are nearly identical to those of Bliss Dairy. When Mr. Backemeyer died not having used the farm inputs in his sole proprietor farming operation, respondent opines, the farm inputs were converted to a nonbusiness use when they were distributed to the Backemeyer Family Trust. When Mrs. Backemeyer received the assets, she took them with a stepped-up basis and contributed them to her sole proprietor farming business. Therefore, respondent asserts, upon Mr. Backemeyer's death the farm inputs were converted

from business to personal use, and Mrs. Backemeyer converted them back from personal to business use. According to respondent, this entitles Mrs. Backemeyer to a deduction under section 162 but also requires Mr. Backemeyer to recognize income related to his conversion of the property from one use to another.

B.    Petitioners' Argument

Much of petitioners' argument rests on the proposition that when Mrs. Backemeyer inherited the farm inputs from her late husband and used them in her own farming operation, she is deemed to have simultaneously sold the inputs and then purchased them for use in farming, with the deemed sale resulting in no gain because she had a full stepped-up basis in the farm inputs. Petitioners insist that they should be regarded separately with respect to the separate Schedules F that they filed for the 2011 tax year (respondent in his answering brief concedes this point). According to petitioners, the stepped-up basis with which Mrs. Backemeyer took the farm inputs gave her a "fresh start" with respect to the tax attributes of these inherited assets. Petitioners point out that this is "not some elaborate scheme to create a double deduction" but is an unusual circumstance that occurred as a result of Mr. Backemeyer's death.

With respect to the tax benefit rule, petitioners cite this Court's Opinion in Frederick v. Commissioner, 101 T.C. 35, 41 (1993), where we developed a four-

part test applying the tax benefit rule. Under Frederick, an amount must be included in gross income in the current year to the extent that (1) it was deducted in a prior year, (2) the deduction resulted in a tax benefit, (3) an event occurs in the current year that is fundamentally inconsistent with the premises on which the deduction was originally based, and (4) a nonrecognition provision of the Code does not prevent inclusion in gross income. Id. Petitioners maintain that the third and fourth parts of the test are not satisfied here: Had Mr. Backemeyer died in 2010 instead and Mrs. Backemeyer used the inputs that same year, then Mr. Backemeyer would still have been entitled to the deduction; and since section 1001 requires a taxpayer to recognize gain only to the extent sale proceeds exceed basis, no gain is recognized since there is a section 1014 basis step-up.

III. Applicability of the Tax Benefit Rule to the Farm Input Deductions

A. Legal Background

Generally speaking, gross income is "all income from whatever source derived," except as otherwise provided in the Code. Sec. 61(a).

Under section 162(a) there is "allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Section 1.162-12(a), Income Tax Regs., specifies that a "farmer who operates a farm for profit is entitled to deduct from gross income as

necessary expenses all amounts actually expended in the carrying on of the business of farming." Moreover, unless the farmer computes income using the crop method, "the cost of seeds and young plants which are purchased for further development and cultivation prior to sale in later years may be deducted as an expense for the year of purchase, provided the farmer follows a consistent practice of deducting such costs as an expense from year to year." Id.

Section 180(a) allows taxpayers "engaged in the business of farming" to elect to deduct expenditures for the purchase or acquisition of fertilizer, lime, and "other materials to enrich, neutralize, or condition land used in farming," instead of charging such expenses to capital account.

A taxpayer using the cash method of accounting ordinarily deducts amounts for the taxable year in which those amounts were paid. Sec. 1.461-1(a)(1), Income Tax Regs. In the case of prepayment for farming supplies, a cash method taxpayer may deduct such payments in the year they were made even if the supplies are to be consumed in a subsequent year, provided that the expenditure is (1) a payment and not a deposit, (2) made for a business purpose and not tax avoidance, and (3) resulting in a deduction that will not materially distort income. See Rev. Rul. 79-229, 1979-2 C.B. 210; see also Agro-Jal Farming Enters., Inc. v. Commissioner, 145 T.C. 145 (2015). While Rev. Rul. 79-229, supra, dealt only with cattle feed,

the rule for prepaid farming expenses has been extended to other contexts as well, including those outside the agricultural industry.  See, e.g., Keller v. Commissioner, 725 F.2d 1173, 1177 (8th Cir. 1984) (extending three-part test to intangible drilling and development costs prepaid by taxpayer), aff'g 79 T.C. 7 (1982).

Section 1014(a) provides that "the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent" is "the fair market value of the property at the date of the decedent's death".  Under section 1001(a), gain from the disposition of property is "the excess of the amount realized therefrom over the adjusted basis".

B.     Tax Benefit Rule

Respondent does not dispute that petitioners' deduction of the farm input costs for tax year 2010 was appropriate at the time it was claimed.  Nor does respondent dispute that Mrs. Backemeyer took the assets with a stepped-up basis under section 1014 equal to the cost of the inputs (which, considering the short time between purchase and Mr. Backemeyer's death, was identical to their fair market value) and properly deducted that basis from income when she used the farm inputs in 2011.

What respondent contends is that, in view of Mr. Backemeyer's death and the concordant transfer of the farm inputs to Mrs. Backemeyer, the tax benefit rule requires that the deductions claimed for tax year 2010 for the farm input expenditures be recovered for 2011. Respondent relies heavily on <u>Bliss Dairy</u>. We agree that <u>Bliss Dairy</u> is the keystone to resolving the issue presented here. But while respondent's reliance on the case is not misplaced, we find his interpretation of it erroneous.

In <u>Bliss Dairy</u>, 460 U.S. at 381, the Supreme Court observed that the purpose of the tax benefit rule is "to approximate the results produced by a tax system based on transactional rather than annual accounting." It is intended "to achieve rough transactional parity in tax * * * and to protect the Government and the taxpayer from the adverse effects of reporting a transaction on the basis of assumptions that an event in a subsequent year proves to have been erroneous." <u>Id.</u> at 383. The rule's application is not automatic. It applies "only when a careful examination shows that the later event is indeed fundamentally inconsistent with the premise on which the deduction was initially based." <u>Id.</u> This means that "if that event had occurred within the same taxable year, it would have foreclosed the deduction." <u>Id.</u> at 383-384.

This Court has had occasion to interpret the tax benefit rule in the light of Bliss Dairy, as in Frederick v. Commissioner, 101 T.C. at 40-41, where we distilled the Bliss Dairy holding on the applicability of the tax benefit rule into a four-part test:

The tax-benefit rule consists of two components, the inclusionary component and the exclusionary component. The exclusionary component, which is partially codified in section 111(a), but which may exist outside the provisions of that section, does not become an issue unless, and until, the inclusionary component of the rule is first satisfied. The inclusionary component provides that an amount deducted from gross income in one year is included in income in a subsequent year if an event occurs in the subsequent year that is fundamentally inconsistent with the premise on which the deduction had previously been based. The exclusionary component of the tax-benefit rule, by contrast, eats away at the inclusionary component by limiting the income that must be recognized in the subsequent year to the amount of the tax benefit that resulted from the deduction. Thus, to summarize the tax-benefit rule, an amount must be included in gross income in the current year if, and to the extent that: (1) The amount was deducted in a year prior to the current year, (2) the deduction resulted in a tax benefit, (3) an event occurs in the current year that is fundamentally inconsistent with the premises on which the deduction was originally based, and (4) a nonrecognition provision of the Internal Revenue Code does not prevent the inclusion in gross income. A current event is considered fundamentally inconsistent with the premises on which the deduction was originally based when the current event would have foreclosed the deduction if that event had occurred within the year that the deduction was taken. [Citations omitted.]

As Bliss Dairy and our precedent demonstrate, "the tax benefit rule must be applied on a case-by-case basis." Bliss Dairy, 460 U.S. at 385. Accordingly, we

"must consider the facts and circumstances of each case in the light of the purpose and function of the provisions granting the deductions." Id. The Supreme Court has further pointed out that nonrecognition provisions of the Code present special difficulties, since there is "an inherent tension between the tax benefit rule and the nonrecognition provision." Id.

In the context of section 162, the Supreme Court in Bliss Dairy observed that the deduction for ordinary and necessary business expenses "is predicated on the consumption of the asset in the trade or business," and that "[i]f the taxpayer later sells the asset rather than consuming it in furtherance of his trade or business, it is quite clear that he would lose his deduction, for the basis of the asset would be zero, * * * so he would recognize the full amount of the proceeds on sale as gain." Id. at 395. Thus, "if the taxpayer converts the expensed asset to some other, non-business use, that action is inconsistent with his earlier deduction, and the tax benefit rule would require inclusion in income of the amount of the unwarranted deduction." Id. A distribution to shareholders of expensed assets, for instance, is analogous to converting such assets to personal consumption. Id. at 396.

In ruling on the lower court's decision in Bliss Dairy, the Supreme Court reviewed the nonrecognition of corporate distributions on liquidation under section 336 as then in effect and concluded that such nonrecognition is not

absolute since it is overridden by sections 1245 and 1250 for example.  See <u>Bliss</u> <u>Dairy</u>, 460 U.S. at 398; secs. 1.1245-6(b), 1.1250-1(c)(2), Income Tax Regs.  The Supreme Court held on balance that the tax benefit rule supersedes nonrecognition of gain under section 336, because the gain arising from application of the tax benefit rule was not the sort of gain that would have been recognized on liquidation but for the operation of section 336.  <u>Bliss Dairy</u>, 460 U.S. at 397.

<u>Bliss Dairy</u> and this case are similar in certain respects.  Both cases involve taxpayers in the farming industry.  In both cases taxpayers purchased farm inputs in one tax year, with those inputs being transferred to other taxpayers in the next.  In both cases taxpayers claimed deductions for their purchases of farm inputs.  In both cases the transferees also claimed deductions for the transferred farm inputs.  And in both cases the transfer was not subject to income tax.  However, there remains a key difference:  <u>Bliss Dairy</u> involved the nonrecognition of gain on a liquidating distribution by a corporation to its shareholders under section 336, whereas in this case the transfer occurred at death.

The Supreme Court's holdings in <u>Hillsboro Nat'l Bank</u> and <u>Bliss Dairy</u> were the product of its analysis of the specific Code sections applicable in those cases.  In <u>Bliss Dairy</u>, 460 U.S. at 386 n.20, the Supreme Court recognized that its decision did not extend necessarily to transfers by gift or death:

An unreserved endorsement of the Government's formulation might dictate the results in a broad range of cases not before us. For instance, the Government's position implies that an individual proprietor who makes a gift of an expensed asset must recognize the amount of the expense as income, but cf. Campbell v. Prothro, 209 F.2d 331, 335 (CA5 1954). Similarly, the Government's view suggests the conclusion that one who dies and leaves an expensed asset to his heirs would, in his last return, recognize income in the amount of the earlier deduction. Our decision in the cases before us now, however, will not determine the outcome in these other situations; it will only demonstrate the proper analysis. Those cases will require consideration of the treatment of gifts and legacies as well as §§ 1245(b)(1), (2), and 1250(d)(1), (2), which are a partial codification of the tax benefit rule, and which exempt dispositions by gift and transfers at death from the operation of the general depreciation recapture rules. Although there may be an inconsistent event in the personal use of an expensed asset, that event occurs in the context of a nonrecognition rule, and resolution of these cases would require a determination whether the nonrecognition rule or the tax benefit rule prevails. [Some citations omitted.]

We look to the Supreme Court's analysis in Bliss Dairy as a guide to determine the tax benefit rule's applicability to the facts at hand, with a particular focus on the treatment of legacies as instructed in note 20 of the opinion.

C.      The Tax Benefit Rule and Transfers at Death

While this Court has examined variations on the Bliss Dairy fact pattern involving liquidations of enterprises, see, e.g., Rojas v. Commissioner, 90 T.C. 1090 (1988) (holding that the tax benefit rule does not require the inclusion in income of expenses deducted for inputs that were used and consumed in the

production of crops distributed to shareholders on liquidation), aff'd sub nom. Schwartz Rojas v. Commissioner, 901 F.2d 810 (9th Cir. 1990); Byrd v. Commissioner, 87 T.C. 830 (1986) (holding that the value of plant inventory, the expenses of growing which were deducted in prior years, transferred to the purchaser of a liquidated nursery business must be included in the transferor's income under the tax benefit rule), aff'd without published opinion, 829 F.2d 1119 (4th Cir. 1987), this case involves the applicability of the tax benefit rule to a different situation--a transfer at death. In applying the heuristic suggested by the Supreme Court in Bliss Dairy and distilled by this Court into the four-part Frederick inquiry, we conclude that a transfer at death is not "fundamentally inconsistent with the premise" on which the section 162 deduction is initially based. See Bliss Dairy, 460 U.S. at 383.

As observed earlier, Frederick v. Commissioner, 101 T.C. at 41, suggests a four-part test to determine whether the tax benefit rule applies to a particular situation:

> [A]n amount must be included in gross income in the current year if, and to the extent that: (1) The amount was deducted in a year prior to the current year, (2) the deduction resulted in a tax benefit, (3) an event occurs in the current year that is fundamentally inconsistent with the premises on which the deduction was originally based, and (4) a nonrecognition provision of the Internal Revenue Code does not prevent the inclusion in gross income.

The first two criteria are met in this case: Petitioners did deduct the farm input expenses for a prior year, and that deduction reduced their taxable income, thereby affording them a tax benefit. However, the third and the fourth criteria are not met.

1.      Fundamental Inconsistency With Original Deduction

As to the third criterion, neither Mr. Backemeyer's death nor the distribution of the farm inputs to and their use by Mrs. Backemeyer was fundamentally inconsistent with the premises on which the initial section 162 deduction for tax year 2010 was based. "A current event is considered fundamentally inconsistent with the premises on which the deduction was originally based when the current event would have foreclosed the deduction if that event had occurred within the year that the deduction was taken." Frederick v. Commissioner, 101 T.C. at 41. Had Mr. Backemeyer died and Mrs. Backemeyer inherited and used the farm inputs in 2010, the initial section 162 deduction would not have been recaptured for purposes of the income tax.

The reason for this is that the estate tax effectively "recaptures" section 162 deductions by way of its normal operation, obviating any need to separately apply the tax benefit rule. When Mr. Backemeyer died, all of his assets, including the farm inputs, became subject to the estate tax, which operates similarly to a mark-

to-market tax when the mark-to-market tax is imposed on zero-basis assets.
Compare sec. 2001(a) (imposing a tax "on the transfer of the taxable estate of
every decedent who is a citizen or resident of the United States"), and sec. 2051
(defining the value of a taxable estate as the value of the gross estate less certain
deductions provided for in the estate tax), and sec. 2031 (defining the value of a
gross estate as the value at the time of decedent's death "of all property, real or
personal, tangible or intangible, wherever situated"), with, e.g., sec. 877A
(imposing an exit tax on U.S. citizens and long-term residents relinquishing
citizenship or lawful permanent residence, respectively, by requiring that "[a]ll
property of a covered expatriate shall be treated as sold on the day before the
expatriation date for its fair market value").  The farm inputs were included in Mr.
Backemeyer's estate at their fair market value, see sec. 2031, which the parties
have stipulated to be equal to the farm inputs' purchase price.  Since the farm
inputs had a basis of zero, they were subject to the estate tax on the same base as
their purchase price, for which Mr. Backemeyer had claimed a section 162
deduction for 2010.

Requiring recapture of the section 162 deduction by increasing taxable
income on petitioners' Form 1040 for tax year 2011 would result in double
taxation of the value of the farm inputs.  The Supreme Court has ruled that "the

same receipt" cannot be "made the basis of both income and estate tax," since "the item cannot in the circumstances be both income and corpus". See Bull v. United States, 295 U.S. 247, 255 (1935). Applying the tax benefit rule here--where the farm inputs are subject to tax as part of Mr. Backemeyer's estate--is therefore impermissible. Cf. id. at 256 ("While * * * the same sum may in different aspects be used for the computation of both an income and an estate tax, this fact will not here serve to justify the Commissioner's rulings. They were inconsistent. The identical money * * * was the basis of two assessments. The double taxation involved in this inconsistent treatment of that sum of money is * * * clear [.]"). The same result obtains even if Mr. Backemeyer's estate did not actually owe any amount payable as estate tax through the operation of the unified credit, see sec. 2010, or the marital deduction for bequests to a surviving spouse, see sec. 2056, so long as his estate was subject to the estate tax regime.

Furthermore, we note that the Supreme Court's approach in Bliss Dairy, 460 U.S. at 383 n.15, calls for a "line between merely unexpected events and inconsistent events." Whereas liquidation of a corporation or a sale of expensed business inputs entails some level of forethought and affirmative intent to act accordingly, death ordinarily does not involve such planning. As the Court of Appeals for the Eighth Circuit has observed, while death may be beneficial for tax

purposes, it is difficult to regard it as a tax avoidance scheme. Estate of Peterson v. Commissioner, 667 F.2d 675, 681-682 (8th Cir. 1981), aff'g 74 T.C. 630 (1980). Under the Supreme Court's Bliss Dairy standard, death is the quintessential "merely unexpected event." Were death fundamentally inconsistent with expensing business inputs, every sole proprietor in the year of his death would face double taxation under both the income tax and the estate tax on all the inputs he had purchased for but not yet used in his business. We are loath to interpret Bliss Dairy to stand for the proposition that any time a sole proprietor dies, all of his expensed assets are subject to recapture. The Supreme Court has refused to accept such a rule, see Bliss Dairy, 460 U.S. at 386 n.20, as do we.

Nonetheless, what evidently concerns respondent is that absent the tax benefit rule's application, petitioners would be entitled to a double deduction. "Double deductions (or their practical equivalent) for the same economic loss are impermissible absent a clear declaration of congressional intent." Thrifty Oil Co. v. Commissioner, 139 T.C. 198, 205 (2012); see also United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969); Charles Ilfeld Co. v. Hernandez, 292 U.S. 62, 68 (1934). We do not think it proper to characterize the deduction claimed by Mr. Backemeyer for 2010 and the deduction claimed by Mrs. Backemeyer for 2011 as a "double deduction", since the estate tax intervened between the two deductions

and since respondent has conceded that "Mrs. Backemeyer's Schedule F business is treated as being separate from Mr. Backemeyer's Schedule F business, as petitioners contend."

The sole cause for the allowance of two deductions here is section 1014(a), which steps up the basis of property acquired from a decedent. Were section 1014 not to apply, then Mrs. Backemeyer would have received the farm inputs with a zero basis and therefore been unable to deduct them. We find it unlikely that respondent would have pursued his tax benefit rule argument were that the case. Since "Congress presumably enacts legislation with knowledge of the law," CRI-Leslie, LLC v. Commissioner, 147 T.C. ___, ___ (slip op. at 13) (Sept. 7, 2016), we conclude that had Congress wished to foreclose a second section 162 deduction as a result of a section 1014 basis step-up, it would have so provided. The estate tax has existed in its modern form for a century, see Revenue Act of 1916, ch. 463, secs. 200-212, 39 Stat. at 777, and section 1014--its basis step-up long a fixture of the Code--has been frequently amended, as recently as by the Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Pub. L. No. 114-41, sec. 2004(a), 129 Stat. at 454. It is hardly unforeseeable that taxpayers would attempt to deduct previously expensed inherited assets for which they received a stepped-up basis, yet at no point has

Congress acted to prevent it. Indeed, the Court of Appeals for the First Circuit has observed that the intent of section 1014 is "that unrealized gain taxed to the decedent's estate at his death shall not be subjected to another tax when it is subsequently realized by the estate or a legatee." Levin v. United States, 373 F.2d 434, 438 (1st Cir. 1967). Thus, far from resulting in a double deduction, the provision for and maintenance of a stepped-up basis under section 1014 is a deliberate legislative choice by Congress to prevent double taxation.

### 2. Applicability of Nonrecognition Provision

Having established the inapplicability of the third Frederick criterion in this case, we now turn to the fourth criterion, which mandates that a nonrecognition provision of the Code not prevent the inclusion of the tax benefit in gross income. This requirement is not met here, since nonrecognition on death is among the strongest principles inherent in the income tax. See, e.g., Willging v. United States, 474 F.2d 12, 13 (9th Cir. 1973) (stating that a cash basis farmer owning appreciated assets is not taxable on the unrealized appreciation, nor is his spouse, because of the section 1014 basis step-up). When an individual dies, his assets are not taxed under the income tax but rather under the estate tax. Upon the assets' distribution to the decedent's heirs, section 102(a) explicitly provides that the heirs' "[g]ross income does not include the value of property acquired by gift,

bequest, devise, or inheritance."[4]  And, as discussed above, section 1014 operates to provide a step-up in basis of the inherited property in the hands of the decedent's heirs; if an heir subsequently disposes of the property, gain is realized only to the extent the proceeds exceed the stepped-up basis.  Sec. 1001(a).

In approaching the fourth Frederick criterion, we also accept the Supreme Court's observation on the effect of sections 1245(b)(2) and 1250(d)(2), which exempt transfers at death from the application of the general depreciation rules, and from which the transfer in Bliss Dairy, 460 U.S. at 386 n.20, was not exempted.  Section 1245(a) provides that in the case of a disposition of certain depreciable property, the lesser of the allowed depreciation deductions or realized gain should be taxed as ordinary income.  Section 1250(a) establishes depreciation recapture rules for depreciable real property otherwise excluded from the operation of section 1245.  Sections 1245 and 1250, along with section 111, codify the tax benefit rule as applied in certain situations.  See, e.g., Estate of Munter v. Commissioner, 63 T.C. 663, 671 (1975) ("While the rule is judicial in origin, it is applied to specific situations by certain Code provisions.  See, for example, secs. 111, 1245, and 1250.  Where not codified, the judicial rule continues.").

---

[4]Secs. 102(b) and 691, which govern the includability of income from a decedent's property and income in respect of decedents, do not apply in this case, since the farm inputs are property and not income from property.

It is telling that the depreciation recapture rules, which, we are reminded, are "a partial codification of the tax benefit rule," Bliss Dairy, 460 U.S. at 386 n.20, do not extend to transfers at death. The regulations bespeak this by omitting from the list of nonrecognition Code sections overridden by the depreciation recapture provisions of sections 1245 and 1250 those sections governing the treatment of a decedent's property. See secs. 1.1245-6(b), 1.1250-1(c)(2), Income Tax Regs. In Bliss Dairy, 460 U.S. at 398, the Supreme Court observed that depreciation recapture under sections 1245 and 1250 was an important exception to the nonrecognition statute at issue there. This is not the case with transfers at death, to which the depreciation recapture rules do not apply. Since sections 1245 and 1250 codify the tax benefit rule as it relates to depreciated property and expressly exclude transfers at death from the rule's scope, see id. at 386 n.20 ("[Sections] 1245(b)(1), (2), and 1250(d)(1), (2) * * * are a partial codification of the tax benefit rule * * * [and] exempt dispositions by gift and transfers at death from the operation of the general depreciation recapture rules."), it follows that the uncodified remainder of the common law tax benefit rule, with which we are concerned in this case, operates in a similar fashion, cf. Segel v. Commissioner, 89 T.C. 816, 841 (1987) ("Even though the [tax benefit] rule originated in the Courts, it has the implicit approval of Congress[.]").

### 3. Conclusion

In view of the above, we find that the tax benefit rule does not apply to recapture for 2011 upon Mr. Backemeyer's death his section 162 deductions for farm input purchases made in 2010. And respondent has conceded that Mrs. Backemeyer is entitled to a deduction under section 162 with respect to her use of the farm inputs in 2011. Therefore, we find respondent's denial of petitioners' deductions improper.

### IV. Accuracy-Related Penalty

Respondent determined an accuracy-related penalty for a substantial understatement of income tax under section 6662(a) and (b)(2), which adds to the tax an amount equal to 20% of the portion of the underpayment to which the penalty applies. Sec. 6662(a).

We have found in favor of petitioners with respect to all determined deficiencies, except as to the denial of a deduction of $203 for custom hire. Petitioners have conceded the denial to be proper. The understatement of income tax in this case is limited to the tax that should have been paid on the $203 deduction petitioners claimed in error, which is well under the greater of 10% of

the tax required to be shown on petitioners' return for 2011[5] or $5,000.  See sec.

6662(d)(1)(A).  Therefore, petitioners are not liable for an accuracy-related

penalty.

V.    Conclusion

In evaluating the application of the tax benefit rule to petitioners' deduction

under section 162 of certain farm input expenditures, we have applied the analysis

mandated by the Supreme Court in Bliss Dairy and distilled by this Court into a

four-part test in Frederick.  We determined that the tax benefit rule did not apply

on Mr. Backemeyer's death in 2011 to recapture the deduction he claimed for

2010 for the farm inputs.  Accordingly, with the exception of a deduction of $203

for custom hire conceded to have been claimed in error, petitioners' deductions

were proper and no accuracy-related penalties should be imposed.

We have considered all of the parties' arguments, and to the extent not

discussed above, conclude that those arguments are irrelevant, moot, or without

merit.

---

[5]While we have not calculated the amount of tax required to be shown on petitioners' return, the magnitude of the numbers is such that the tax on $203 of additional income is less than the tax required to be shown on petitioners' tax return.  Petitioners had shown on their 2011 income tax return, as adjusted, their total tax to be $153,305, 10% of which is $15,330.50.  Even if the improperly deducted $203 were taxed at a rate of 100%, the understatement would be well under 10% of the tax required to be shown ($15,330.50 plus $203, or $15,533.50).

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.